AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Kansas

| | |
|---|---|
| NATHAN BARNS, et al., *Plaintiff* | ) ) ) |
| v. | ) Civil Action No. 2:22-cv-02433-HLT-KGG |
| LAWRENCE PAYNE, et al., *Defendant* | ) ) ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: **HARDBODY SUPPLEMENTS LLC**

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Offices of Stinson LLP at 1201 Walnut Street, Suite 2900, Kansas City, MO 64106-2150 | Date and Time: 1:00 p.m. CDT on May 3, 2023 |
|---|---|

The deposition will be recorded by this method: **Audiovisual**

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Documents listed in Exhibit B attached hereto

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____        _____
*Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Plaintiffs** Nathan Barns, Susannah Kilpatrick and Darren Kilpatrick , who issues or requests this subpoena, are:

Barry R. Lax and Robert R. Miller Lax & Neville LLP, 350 5th ave, Suite 4640, New York, NY 10118, tel:202.696.1999, blax@laxneville.com, rmiller@laxneville.com; Brian Sobczyk, Stinson LLP 1201 Walnut Street Kansas City, MO 64106

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:22-cv-02433-HLT-KGG

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____
_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print    Save As...    Add Attachment    Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS APPLICABLE TO EXHIBITS A AND B

1- <u>Communication</u>. The term "communication" means any disclosure, transfer, or exchange of information, whether orally or in writing, and whether in person, by telephone, by email, electronically or otherwise, including, but not limited to, e-mails, text messages, discussions, statements, negotiations, inquiries, requests, notices, responses, reports, analyses, logs, journals, diaries, letters, demands and complaints.

2- <u>Communications</u>. The term "communications" shall refer to internal communications and communications with any third party.

3- <u>Document(s)</u>. The term "document(s)" includes, but is not limited to the original and all copies (regardless of origin and whether or not including additional writing thereon or attached thereto) of memoranda, reports, books, manuals, instructions, financial statements or reports, price books, records, notes, letters, notices, confirmations, telegrams, receipts, pamphlets, magazines, newspapers, inventory books, prospectuses, interoffice and intra office communications, contracts, cables, notations or memoranda of any sort regarding conversations and/or telephone calls and/or meetings and/or other communications, bulletins, printed matter, computer printouts, facsimile transmissions, e-mails, teletypes, telexes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, resolutions, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, reviews, opinions, offers, studies and investigation questionnaires and surveys, worksheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures, electronic and mechanical records, tapes, cassettes, disks, recordings and computer printouts) and other written, printed, typed or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, disc, film, tape or videotape.

4- <u>Agreement or agreements</u>. The terms "agreement" or "agreements" mean all agreements, including any and all related exhibits, addenda, restatements, amendments, attachments and any and all drafts of such agreements, exhibits, addenda, restatements, amendments and attachments.

5- <u>Parties</u>. The term "Parties" shall refer to Plaintiffs and Defendants in the above captioned matter. "Plaintiffs" shall mean Nathan Barns, Susannah Kilpatrick and Darren Kilpatrick. The term "Defendants" shall mean Lawrence Payne and Patricia Payne.

6- <u>Lawrence Payne</u>. The term "Lawrence Payne" means and/or refers to Defendant Lawrence Payne, his representatives, agents, assigns, entities or anyone else acting on his behalf.

7- <u>Patricia Payne</u>. The term "Patricia Payne" means and/or refers to Defendant Patricia Payne, her representatives, agents, assigns, entities or anyone else acting on her behalf.

8- <u>Company</u>. The term "Company" shall refer to Hardbody Supplements LLC, any of its parents, indirect and direct subsidiaries, affiliates, successors and/or predecessors, any and

all current or former partners, member, officers, directors, agents, employees or other representatives of the foregoing.

9- <u>Andrew Solomon</u>. The term "Andrew Solomon" means and/or refers to Andrew Solomon, his representatives, agents, assigns, entities or anyone else acting on his behalf.

10- <u>FC Fulfillment Services LLC</u>. The term "FC Fulfillment Services LLC" shall refer to FC Fulfillment Services LLC, any of its parents, indirect and direct subsidiaries, affiliates, successors and/or predecessors, any and all current or former partners, members, officers, directors, agents, employees or other representatives of the foregoing.

11- <u>Phoenix Forex Trading</u>. The term "Phoenix Forex Trading" shall refer to Phoenix Forex Trading, any of its parents, indirect and direct subsidiaries, affiliates, successors and/or predecessors, any and all current or former partners, members, officers, directors, agents, employees or other representatives of the foregoing.

12- <u>Operating Agreements</u>. The term "Operating Agreements" shall refer to any and all Hardbody Supplements LLC Operating Agreements, including the 2016 Operating Agreement and 2020 Operating Agreement, and including any and all related exhibits, addenda, restatements, amendments, attachments and any and all drafts of such agreements, exhibits, addenda, restatements, amendments and attachments.

13- <u>2016 Operating Agreement</u>. The term "2016 Operating Agreement" shall refer to the Hardbody Supplements LLC Operating Agreement dated October 21, 2016, including any and all related exhibits, addenda, restatements, amendments, attachments and any and all drafts of such agreements, exhibits, addenda, restatements, amendments and attachments.

14- <u>2020 Operating Agreement</u>. The term "2020 Operating Agreement" shall refer to the Hardbody Supplements LLC Operating Agreement, which was circulated and agreed upon by the Parties in May 2020, and which reflects the membership interests of Plaintiffs and Defendants as "A-Class" voting interests, including any and all related exhibits, addenda, restatements, amendments, attachments and any and all drafts of such agreements, exhibits, addenda, restatements, amendments and attachments.

15- <u>Equity Interest Purchase Agreement</u>. The term "Equity Interest Purchase Agreement" ("EPA"), shall refer to the Hardbody Supplements LLC Equity Interest Purchase Agreement signed by Plaintiffs and Defendants on April 6, 2019, including any and all related exhibits, addenda, restatements, amendments, attachments and any and all drafts of such agreements, exhibits, addenda, restatements, amendments and attachments.

16- <u>Interests</u>. The term "Interests" shall refer to Membership Interest, Ownership Interest, and Percentage Interest as defined in the Operating Agreements as follows:
    (i)    "Membership Interest" means the entire ownership interest of a member in the Company at any particular time, including the right to any and all benefits to which a member may be entitled as provided in this Agreement and under the Kansas Revised Limited Liability Company Act, together

        (ii)    with the obligations of the Member to comply with all of the terms and provisions of this Agreement.

        (ii)    "Ownership Interest" means the Percentage interest or Units, as applicable, based on the manner in which relative ownership of the Company is divided.

        (iii)   "Percentage Interest" means the percentage of ownership in the Company that, with respect to each Member, entitles the Member to a Membership Interest and is expressed as either a percentage, or units.

17- <u>Units</u>. The term "Units" as defined in the Operating Agreements, refers to units of ownership in the Company, that, with respect to each Member, entitles the Member to a Membership Interest.

18- <u>Distribution</u>. The term "distribution" shall refer to all distributions, dividends, disbursements, loans, draws, advances, dividends, payments, profit sharing, salaries, commissions, hourly wages, or other transfers of money or property of any kind whatsoever to any party, including but not limited to Defendants, any entities in which Defendants have any interest, direct or indirect, Defendants' family members, agents, and other affiliates, and any third-party of any kind.

19- <u>Complaint</u>. The term "Complaint" refers to Plaintiffs' Complaint, dated October 21, 2022.

20- <u>Answer</u>. The term "Answer" refers to Defendants' Answer, dated November 18, 2022.

21- <u>Person</u>. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

22- <u>Concerning</u>. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

23- <u>Relating/Referring</u>. The words "relating to" and/or "referring to" mean any communication, writing or record which implicitly or explicitly refers to, relates to, concerns, reflects, embodies, or in any manner describes the subject matter of the request.

24- <u>All/Any/Each</u>. The terms "all" "any" and "each" shall each be construed as encompassing any and all.

25- <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the topic all topics that might otherwise be construed to be outside of its scope.

26- <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

# EXHIBIT A

## RULE 30(b)(6) TOPICS OF DESIGNATION

1- The formation and organization of the Company, including but not limited to the drafting, preparation or review of the Operating Agreements and Equity Purchase Agreement ("EPA") between Plaintiffs and Defendants.

2- The Company's financials from its organization on October 10, 2016 to the present, including but not limited to the Company's general ledger, profit and loss statements, financial statements, K-1s issued to current or former members of the Company, account statements for banks and credit cards maintained by the Company, revenues, expenses, rebating programs, state and federal tax liabilities, and any and all contractual relationships with members of the Company, related parties, affiliates, and third-parties.

3- The alleged "audit" of the Company represented to be conducted from July 2022 to the present, and the 8-page document produced in the above-captioned matter bearing Bates numbers PAYNE 000001-000008 represented to be the "result" of the "audit."

4- The Company's assets and liabilities, including but not limited to cash, intellectual property, accounts receivable, inventory, investments, and contracts on one hand, and promissory notes or other debt instruments, lines of credit, accounts payable, and other contractual or legal obligations of any kind, on the other hand.

5- Distributions by the Company, including but not limited to payments, draws, expense reimbursements, disbursements, loans, dividends, advances, profit sharing, salary, commission or any other payment or transfer of any kind, whether of money or other asset or liability.

6- The Company's operations and all commercial relationships of the Company, including but not limited to any and all manufacturers, vendors, distributors, including retailers and whole-sale distribution channels of the Company.

7- The Company's business records, including but not limited to:
   a. History of the Company;
   b. Contracts and/or agreements entered into by the Company;
   c. Employees and managers of the Company;
   d. Meetings held by the Company;
   e. Original investors and/or members of the Company and their membership percentages;
   f. Transactions whereby investors and/or new members were brought in;
   g. All distributions by the Company;
   h. All expenses incurred by the Company;
   i. Any acquisition by the Company of assets or shares or units of another company;
   j. Any loans, including but not limited to Small Business Administration (SBA) Loans;

      k.  Any litigation which the Company is a party; and

      l.  Any other Company matter which would normally be reflected in the minute book.

8- The Company's record-keeping document retention policies, including but not limited to the location of Company documents, communications, and electronic devices, electronic and physical communication systems utilized by the Company, the Company's mailing and distribution addresses, and any and all custodians of documents related to the Company.

9- The Company's past and current owners, members, investors, fundraisers, accountants, attorneys, auditors, officers, directors, agents, employees or any other agent, affiliate, or representative of the Company.

10- The Company's relationship with Andrew Solomon and/or FC Fulfillment Services LLC, including but not limited to any transactions and/or agreements, whether formal or informal, between the Company or any of its members and Andrew Solomon and/or FC Fulfillment Services LLC or any of its members.

11- Payments, rebates and/or refunds issued by the Company to any of its customers relating to the sale of the Company's products.

12- Investments made by the Company, including but not limited to any investments in trading systems such as Phoenix Forex Trading.

Plaintiffs reserve the right to seek further testimony or information from the designated witness or witnesses as may be necessary or appropriate based on the information provided during the course of the deposition.

# EXHIBIT B

## Documents Requested

1- Any and all documents and communications relating to the formation of the Company, including but not limited to the Company's organizational documents, including Articles of Organization and/or similar constituent documentation, and all amendments thereto.

2- Copies of the Company's general ledger, profit and loss statements, audited and/or unaudited financial statements, including but not limited to all monthly and quarterly statements, and all K-1s issued to current and former members in the Company.

3- Any and all monthly account statements for any bank accounts maintained by the Company.

4- Any and all monthly account statements for any and all credit cards maintained by the Company.

5- Any and all documents and communications relating to any audit, formal or informal, relating to the Company, including but not limited to the alleged "audit" of the Company represented to be conducted from July 2022 to the present, including but not limited to any documents relating to and the 8-page document produced in the above-captioned matter bearing Bates numbers PAYNE 000001-000008 represented to be the "result" of the "audit."

6- Copies of the Company's books and records, including but not limited to the following information:
    a. History of the Company;
    b. List of original investors and/or members and their membership percentages;
    c. Transactions whereby investors and/or new members were brought in;
    d. All distributions by the Company;
    e. All expenses incurred by the Company;
    f. Any acquisition by the Company of assets or shares or units of another company;
    g. Any loans, including but not limited to Small Business Administration (SBA) Loans;
    h. Any litigation which the Company is a party; and
    i. Any other Company matter which would normally be reflected in the minute book.

7- Any and all documents and communications relating to any and all contracts entered into by the Company, including but not limited to any commitments, financing arrangements, loans, understandings, plans, leases, instruments, policies, permits, license or other binding arrangements and/or ongoing negotiations to which the Company is a party and/or by which its assets and/or properties are bound.

8- Any and all documents and communications relating to any of the Plaintiffs.

9- Any and all communications between the Company or any of its members, and any of the Parties.

10- Any and all documents and communications evidencing or relating to the valuation of the Company, its Interests, and/or Units.

11- Any and all documents and communications relating to any and all assets owned by the Company, together with a description of the assets, their value, their date of purchase and/or lease.

12- Any and all documents and communications relating to Plaintiffs' investment and/or membership in the Company.

13- The Company's filed federal and state income tax returns, including but not limited to all schedules, worksheets and forms.

14- Any and all documents and communications, including but not limited to notes, minutes, resolutions, recordings, presentations, drafts of presentations and agendas, relating to any and all Company meetings, including but not limited to meeting of members.

15- Documents and communications relating to Defendants' employment, membership and/or management of the Company, including but not limited to any and all employment agreements, membership agreements, expense records, records of employee and/or client complaints and investigations, and personnel file.

16- Any and all documents and communications relating to any potential and/or realized capital raises by the Company.

17- Any and all documents and communications relating to the manufacturing and/or sale data of the Company's products, including but not limited to documents and/or communications related to the sale of the Company's products through Shopify and Amazon.

18- Any and all agreements between the Company and the Parties and any and all documents and/or communications relating thereto.

19- Any and all Equity Purchase Agreements (EPA), including but not limited to the 2019 Equity Purchase Agreement, and any and all documents and/or communications relating thereto, including but not limited to, documents and communications related to the negotiation and/or formation of the Equity Purchase Agreements.

20- Any and all Company Operating Agreements, including but not limited to the 2016 Operating Agreement, the 2020 Operating Agreement, and any and all documents and/or communications relating thereto, including but not limited to documents and/or communications related to the negotiation and/or formation of the Operating Agreements.

21- Any and all documents and communications between the Company and/or its members, and Andrew Solomon and/or FC Fulfillment Services LLC, including but not limited to any transactions and/or agreements, whether formal or informal, between the Company or any of its members and Andrew Solomon and/or FC Fulfillment Services LLC or any of its members.

22- Any and all documents and communications relating to any payments, rebates and/or refunds issued by the Company to any of its customers relating to the sale of the Company's products.

23- Any and all documents and communications relating to any investments by the Company or its members, including but not limited to any investments in trading systems such as Phoenix Forex Trading.