```
 1              IN THE UNITED STATES DISTRICT COURT
                     DISTRICT OF KANSAS
 2

 3   NATHAN BARNS,
     SUSANNAH KILPATRICK, and
 4   DARREN KILPATRICK,

 5           Plaintiffs,

 6      vs.                      District Court
                                 Case Number
 7   LAWRENCE PAYNE and          22-2433
     PATRICIA PAYNE,
 8
             Defendants.
 9

10              TRANSCRIPT OF PROCEEDINGS

11

         On the 4th day of May, 2023 at 2:00 p.m. came on
12   to be heard in the TELECONFERENCE HEARING in the
     above-entitled and numbered cause before the HONORABLE
13   KENNETH G. GALE, Magistrate Judge of the United States
     District Court for the District of Kansas, Sitting in
14   Wichita.
         Proceedings recorded electronically.
15       Transcript produced by mechanical stenography and
     computer-aided transcription.
16

17   APPEARANCES
         The Plaintiffs appeared telephonically and by and
18   through:
         Mr. Robert Miller
19       Ms. Lori Baitarian
         Ms. Sandra Lahens
20       Lax Neville Attorneys at Law
         350 Fifth Avenue, Suite 4640
21       New York, NY 10118

22       The Defendants appeared telephonically and by and
     through:
23       Mr. Andrew M. DeMarea
         Mr. Matthew D. Forsgren
24       Forsgren Fisher McCalmont DeMarea Tysver, LLP
         1500 Capella Tower
25       225 S. 6th Street
         Minneapolis, MN 55402
```

1         (The following proceedings were electronically

2    recorded and have been requested transcribed:)

3         THE COURT:  Good afternoon, this is Judge Gale.

4         Who's on the call for the plaintiffs, please?

5         MR. MILLER:  Good afternoon, Your Honor.

6         This is Robert Miller.  We should have local

7    counsel on the line, too, although I'm not sure who from

8    that office is on.

9         And then from my firm we should have Sandra Lahens

10   and Lori Baitarian.

11        MS. BATARIAN:  Lori Baitarian is on this call.

12        THE COURT:  Okay.  Just Mr. Miller and Ms.

13   Baitarian.  Okay.

14        Who's on for the defense?

15        MR. DEMAREA:  Good afternoon, Your Honor.

16        This is Andy DeMarea with the Forsgren Fisher Law

17   Firm.

18        And my partner Matt Forsgren is also on the line.

19   And Matt is admitted pro hac in the case.

20        THE COURT:  Okay.  Well, thanks for calling in.

21        This is an informal conference on discovery

22   issues.  Having a little bit of a deja vu on this because

23   we did this what, in March?  On responses by the

24   plaintiffs to discovery issues.

25        I've -- and thank you for your submission.

1        As I think I said when you did this in March, this

2   is the kind of the hearing for submissions that is

3   probably the most helpful so I do appreciate that.

4        I'm afraid, and like I guess I'll ask the

5   defendants exactly the opposite, I'm -- and this I don't

6   think would be a surprise to you just because of the

7   March phone conference, but afraid you're going to have

8   to listen to a speech from me about this before we get

9   into anything specific, if we do get into anything

10  specific.  And my speech will be followed by a

11  suggestion, and we'll see how all that goes.

12       And I'm aware that these responses were submitted

13  before -- before we did the conference on March 15th

14  about the plaintiff's response.

15       Was it March 15th?  March something.  It was

16  sometime in March that we did a conference.

17       And I know that these responses were submitted

18  before that but the reason I think that is actually

19  important to me is because I gave a similar speech during

20  that -- during that hearing about things that I thought

21  were done improperly generally in responding, and the

22  defense has done the same thing at least as bad, perhaps

23  worse, in your response.

24       But I know you didn't have the benefit of my

25  thoughts before you did this.  That is sort of mitigating

05/04/2023      BARNS v. PAYNE      22-2433      4

1  because I think I said in March these things I'm about to

2  talk about are not novel to my attitude about these

3  issues.  A measure of judges in this district have dealt

4  with these questions over and over and over again.

5        So having said that, here's some things I didn't

6  like about your responses in general, before we talk

7  about the specific ones.

8        Common objections at the beginning of responses

9  are not proper because you can't tie them to anything or

10  evaluate them.

11        I know that it is the way the lawyers think you're

12  putting your foot in the door to protect your client but

13  you're not.  And the first thing I would do if I was

14  ruling on these current requests is I would simply strike

15  all those and overrule them.

16        The second thing that's not proper is broad

17  objections and those are defined exactly as you've done

18  them here, which is that you are opening answers to every

19  single request with exactly the same set of "overly

20  broad" and "overly burdensome" to this case, those

21  things.

22        That -- I just would simply strike all of that and

23  overrule it because you simply do it every time, which

24  those are classic boilerplate objections.  Every one has

25  responded to that.

1        But then there is some things that are a little

2   bit different about these particular responses that I

3   think are equally improper.  An objection in this case

4   that things are requesting proprietary information, I

5   don't even know how to evaluate that.

6        That is -- of course everything in this case is

7   proprietary information.  The very nature of this dispute

8   is proprietary.  There is a protective order I think in

9   place that is designed to protect information from going

10  to the public but there isn't anything -- none of the

11  proprietary information objections are valid in my view.

12       You're also not allowed to say that you

13  will -- one of the responses -- and by the way I just

14  recently had another lawyer, so we won't be talking about

15  this.

16       You are not permitted to say you will produce

17  nonprivileged documents.  That's a backwards objection

18  based on privilege.  If you have a privilege objection

19  you need to make it.  And then privilege log the

20  documents or the pieces of the documents.

21       You can't -- you can't unilaterally just say,

22  Well, we're just going to produce non-privilege

23  documents.  That avoids your obligation of making a

24  proper objection and then a privilege log to the

25  documents.

05/04/2023        BARNS v. PAYNE        22-2433        6

1          Equally true you're not permitted say that you are

2    going to redact irrelevant information from a document.

3    That again is a backwards way of avoiding the proper

4    relevancy options to given the document or something

5    admitted and supporting that objection in a way that you

6    know that can be evaluated by the person asking the

7    question.

8          Sensitive, personal information without -- and by

9    the way, at the end of this, particularly these -- there

10   is a few of these at the end especially that I think are

11   vulnerable to some objections but that again is again

12   covered by a protective order and that is generally not

13   something you can make a general objection, and that is

14   not something you can make every time.

15         When you make a burdensomeness objection you have

16   to -- you have to demonstrate by something that is

17   burdensome.  If not, a request is almost never burdensome

18   on its face.

19         And proportionality is really just kind of a

20   burdensomeness objection, because those are general.

21         I really think the defense came through with this

22   with the impression that you answered almost everything

23   just as if you were just going to produce what you wanted

24   the plaintiffs to see.  I mentioned 15 which talks about

25   documents relating to any audits.  And there you object

1  to all that stuff but you produced what you wanted them

2  to see which the result is some recently reviewed.

3       In other words, you don't just tell them what they

4  want to see, this is litigation.

5       And -- and the overbreadth objections are

6  generally not valid all the way through.

7       Now what -- having said that, I'm -- you know, and

8  by the way, I am not looking at this in a vacuum.  I

9  understand that to the some extent the plaintiffs did the

10  same thing to you when they responded, and that makes me

11  less likely when this comes up less likely for me to

12  sanction you for this.  But if it were not for this I

13  would simply overrule the objections, so you would have

14  to produce all the documents and order sanctions because

15  I think mostly the way these are answered is so patently

16  improper that I really wouldn't have any choice.

17       But I am aware that we have kind of been through

18  this on both sides and there are some things at the end

19  which I don't know that I -- we could talk about them but

20  I don't know that I have final opinions about but they

21  could very well be vulnerable to some objections.

22       I think -- you know, I think 31 and 32, although

23  to some extent 31 is -- part of 31 are documents that are

24  already required under Rule 26(a) under initial

25  disclosures, but I know to some extent those objections,

1  those objections might be well placed.

2        I think the request 29 likely is -- is overbroad.

3  That doesn't mean that it's irrelevant and certainly

4  not -- a lot of this is -- the objections, a lot of the

5  objections are not valid.

6        The tax return request is something that I don't

7  know -- I don't know anything about it, I don't

8  understand it, kind of how that all -- how that all falls

9  in place.  And so there are some other things that, like

10 I say, 28 is also in the category of something that might

11 be something that could be discussed but your -- I -- and

12 I think you did this with the plaintiffs.

13       They did these overbreadth and overbroad

14 objections and we overruled those objections, but yet we

15 drilled down and actually looked at some of those things

16 so I don't want to be unfair about that and I don't want

17 to be harder on the plaintiffs on that than I was on the

18 defendants on that issue.

19       But here's a suggestion, and you all can think

20 about whether this would be productive.  My suggestion is

21 that you try -- you try to answer these again.  And if

22 you want to talk a little bit about some of these

23 specific issues before we log off today, I'm not

24 unwilling to do that but -- but answer these again

25 without the offending conduct.

1        You know I really did get through these requests

2  with the -- with the impression that really you're just

3  trying to hide stuff.  And I don't know if I felt that

4  way about the plaintiffs' responses.  Their general

5  objections were similar, at least in terms of the

6  objections, but I did get through this with just the

7  opinion that you were giving them what you wanted them to

8  see and not what they are asking for.

9        And I know you don't want that to be the

10  impression that the Court gets as I look at a motion to

11  compel.  But I -- it would be a lot easier to look at

12  this, and actually to avoid a waiver finding by the

13  Court, if you went back and gave specific responses to

14  these specific requests and then eliminate some of these

15  that are plainly -- plainly not valid objections.

16        So have I -- defense counsel, have I -- I

17  don't -- I hope I haven't ruined your afternoon.

18        I think -- I think we're trying to get this done.

19  Do you think I'm way off base in my evaluation of your

20  responses?

21        MR. DEMAREA:  Um, Your Honor, yeah, this is Andy

22  DeMarea.

23        Okay.  Certainly understand the Court and where

24  Your Honor is coming from and I've actually have got a

25  few different layers of response.

05/04/2023      BARNS v. PAYNE      22-2433      10

```
1          I -- I think the direction about re-answering
2  makes sense given the sum total of what Your Honor has
3  said.  We -- I do take a different view of what our
4  production position is on great a number of these from
5  what the Court's impression has been.
6          And part of this gets to the second part of our
7  introductory statement to Your Honor which was we are in
8  the midst of ongoing document productions.  I -- when I
9  look at a request, and it can be any of them, that says
10 "any and all documents and communications regarding X
11 topic" and then I hear Your Honor say overbroad  or
12 overly burdensome is a boilerplate objection, I -- I do
13 have a different view on that, Your Honor, given the
14 things that Your Honor took us through during the
15 May -- March 31st call, which was that the Court also
16 does not like those forms of request which you know the
17 defense had sent some and there had been objections back.
18         So I do question if we're not allowed to say
19 something is overly broad.  I understand that Your
20 Honor --
21         THE COURT:  Well, I -- but of course you are
22 allowed to do that.  You are just not allowed to do that
23 every single time whether it applies or not and if you do
24 that, then I just strike them all.
25         MR. DEMAREA:  Well, and so --
```

1          THE COURT:  So you made that objection literally

2   to every request.

3          MR. DEMAREA:  Okay.  In other words you -- you

4   would -- we need to explain it if we're going to argue

5   that that truly applies specific to this inter -- this

6   RFP is what you are saying?

7          THE COURT:  There you go.

8          MR. DEMEREA:  Okay.

9          THE COURT:  Yeah, what we are trying to avoid is

10  just -- is just nonsense.  I can't -- I need to figure

11  out which ones you really mean that about.

12         MR. DEMAREA:  And then, Your Honor, similarly,

13  when -- and you know what, Judge, I am familiar with the

14  opinions in this Court about you know general objections,

15  as the Court calls them.

16      For example, though, as a practitioner, I don't

17  think any of us would think that we would ever be

18  producing something that's privileged and you know in

19  fact there is clawback rules about that.

20         THE COURT:  Yeah.

21         MR. DEMAREA:  So -- so to say upfront we don't

22  intend to produce anything that's privileged, and then

23  when I hear the Court say that Your Honor would strike

24  that and disallow it, I -- as a practitioner, I don't

25  understand -- I mean, we would never be producing

05/04/2023      BARNS v. PAYNE      22-2433      12

1  privileged things but I feel that I need to put people on

2  notice of that position because --

3            THE COURT:  Yeah, that's a -- but the requester

4  of documents is entitled to know whether you think that

5  that particular request includes things that you think

6  are privileged.

7       In other words they're entitled to have you lodge

8  that objection to a particular request.  And so I

9  understand that you don't want to produce them

10 [inaudible] and we wouldn't make you unless of course you

11 end up waiving the objection somehow.

12      But the -- but the -- but making a general

13 opposition upfront is no help.  We don't know what you

14 are withholding based on that objection.  You are not

15 privilege logging based on that general objection.

16      You are required to make the specific objection of

17 privilege, ask the specific request and privilege log the

18 documents.

19      And some of those requests by the way are things,

20 which I think -- generally this is true, sometimes the

21 requests are not really requested to get privileged

22 information, it is just the way the request is worded it

23 in fact does.

24      So you would say you know, well, we're going to

25 produce this stuff but we object because some of this

1   stuff is privileged and then you either have to log them

2   or reach some agreement with counsel so you don't have

3   to.

4          You know if you ask for something so broad that

5   includes letters from your client for notice of

6   litigation --

7             MR. DEMAREA:  Right.

8             THE COURT:  -- and they say, We agree you don't

9   have to log those and then I have an agreement but they

10  are entitled to have you make that objection as to a

11  request.  You can't just make it generally that we don't

12  intend to produce.  You can also say we don't intend to

13  produce stuff that is irrelevant.

14         Well, I guess not but that -- but now we don't

15  know whether you're editing your document requests that

16  is specific responses but things you think aren't

17  relevant.  And they are entitled to know whether you are

18  withholding a document that you determined to be

19  irrelevant as to a particular request.  That's why those

20  general objections are not any good.

21            MR. DEMAREA:  Yeah, I -- I completely respect

22  Your Honor on this.  I respectfully disagree as to the

23  general objections, but that's just -- you know, I

24  understand that.

25         And not because I think it's a hide-the-ball kind

05/04/2023       BARNS v. PAYNE       22-2433       14

```
 1  of a practice but because I think it's just an effective
 2  way to say, Hey, here's what we are willing to do.
 3          But I hear what Your Honor is saying overall and
 4  if you're saying to take another run through these, be
 5  very specific and -- and don't -- you know don't start
 6  with an objection, I -- Your Honor, what I will say is on
 7  discovery we received and answered more recently where --
 8  after the March 31st phone call, what we would do is if
 9  there -- for example, if there was an interrogatory that
10  said, you know, produce, and then named some category,
11  what we would say is, We will -- here's the information
12  we can provide, or we're going to provide pursuant to
13  your request.
14          Now, as to the parts of the request that then go
15  beyond that, you know A, B, C any of those kind of things
16  we would object, to me, that's actually a different way
17  to do it than you know -- like because I have heard Your
18  Honor say before you don't -- the Court doesn't often
19  like when parties object, and then answer any way and I
20  think at least in the initial run through at least that
21  is what was done.
22          As you can see from the table, there are a number
23  of these where we are actually making pretty substantial
24  productions which are ongoing.
25          THE COURT:  I'm not [inaudible] also as I think
```

1  about answering after objection -- after objecting, you

2  know, the document requests are a little bit different.

3       My biggest problem with that is that you do that

4  with the interrogatories because with

5  interrogatory -- well, I guess it could be either way.

6       The question is whether you are objecting to the

7  production or whether you're objecting to the way the

8  question's asked.  And if you're objecting to the way the

9  question is asked it doesn't really make to respond.

10       But if you are saying, I understand what you are

11  asking for but I object to the production producing part

12  of it, that is perfectly legitimate.  You know, you're

13  asking for X, Y, and Z and we object to producing those

14  because it is privileged or irrelevant or beyond the

15  scope of discovery or you know whatever your objection

16  is.

17            MR. DEMAREA:  Okay, thanks.

18            THE COURT:  I do think that makes sense

19  sometimes.

20            MR. DEMAREA:  Okay.  Okay.

21       Just looking at my notes here real quick, Your

22  Honor, and see if there is anything else.

23            THE COURT:  And some of these overly broad

24  objections might be good, it's just that you can do it

25  every single time and expect the Court to think it's a

05/04/2023      BARNS v. PAYNE      22-2433      16

1  real objection.

2          MR. DEMAREA:  Right.  Okay.

3          Does Your Honor envision that -- I'm assuming Your

4  Honor is talking about just answer these again,

5  not -- not create a third comment in the chart for the

6  time being?

7          You're suggesting take another shot at answering

8  these from the get-go.

9          THE COURT:  I --

10          MR. DEMAREA:  -- specifically going forward with

11  productions of course.

12          THE COURT:  And the plaintiff has the inability

13  [inaudible] guys.  But I think so.

14          Because it is really important that the requester

15  know what they are getting and what you are -- what you

16  are producing and what you object to produce and why and

17  I just don't think there is any clarity here about some

18  of that.

19          And by the way, I'm happy to make a few comments

20  about some reservations I have about some of the specific

21  requests but --

22          MR. DEMAREA:  Yeah, I do want to hear those,

23  Judge.

24          THE COURT:  Okay.

25          But I -- but if I -- I think -- let me ask

05/04/2023      BARNS v. PAYNE      22-2433      17

1  plaintiffs' counsel whether you all are open to letting

2  them take another run at making a more -- a clearer

3  response that doesn't -- that's not cluttered up with a

4  lot of boilerplate and general objections.

5        MR. MILLER:  Thank you, Your Honor.

6        I think that would depend in part upon having a

7  very tight schedule to turn those responses around and

8  whether coming back to us with reworded, maybe more

9  specific but ultimately for those second category of

10 reasons Your Honor laid out beyond the form of the

11 objections, the nature of the objection, if -- sticking

12 to, ultimately the position they have taken on what they

13 produced or won't produce without a valid objection, will

14 be subject potentially to sanctions when we get to a

15 motion to compel, because we are very concerned in this

16 case with delay and with attempts to hide the ball which

17 I think are evident throughout the responses.

18       That said, you know the first thing we wanted in

19 the meet and confer was to get a straight answer on our

20 requests and we asked for it.  During the meet and confer

21 we were told we would get more clarity on what they were

22 actually producing, what they were holding, what the

23 basis was, we got a chart that did not provide that

24 clarity.  We asked for it again.  We didn't get it.  So

25 we are simply --

05/04/2023      BARNS v. PAYNE      22-2433      18

1        MR. DEMAREA:  Objection.

2     Judge -- there was not a second request.

3        MR. MILLER:  I -- there was a second request, we

4  set it forth in the chart that we sent to them and then

5  there was some talk of having a phone call but, again,

6  telling us we should wait to see what was produced and

7  then come back to them if we needed anything but let me

8  just -- we -- so we would be happy to get a straight

9  answer on the request as Your Honor is proposing.  We

10 would just want it to be within a very tight time frame.

11       And I do want to just be clear, and I think Your

12 Honor eluded to this, but while we did have, and we

13 apologize for it, boilerplate objections to a handful of

14 document requests, before we even got on the phone with

15 the Court we had agreed to simply produce all responsive

16 documents.

17       On all of those requests but two, one dealing

18 with, I believe 0 one dealing with tax returns, which

19 Your Honor couldn't really see a basis for the request,

20 the relevance of the request, and one dealing with I

21 think other -- and this is on the interrogatories, other

22 entities that are -- that plaintiffs might own.

23       Otherwise, we had already drafted our objections

24 and agreed to produce documents.  And before we went into

25 the whole meet and confer process we had generally agreed

05/04/2023      BARNS v. PAYNE      22-2433      19

```
 1  to produce documents so I -- in that sense, I don't think
 2  we're dealing with the same kinds of discovery conduct.
 3       And I think at this point plaintiffs are entitled
 4  to sort of move discovery along, so if -- if Your Honor
 5  can set a tight time frame and if it is clear that
 6  defendants have to come back with bona fide objections
 7  and clarity on what is actually being produced, we would
 8  be fine with that.
 9       But I would also raise a concern, we just heard a
10  reference to all the documents that are being produced.
11       We have looked over the documents.  What's
12  generally been produced?  The emails between the parties.
13  Some of them missing attachments, but generally what have
14  been produced are screenshots of text messages between
15  the parties, though we were told we would get the
16  financial quote underlying what was once called an audit
17  and is now called a review, we haven't received the sort
18  of cherry picked set of documents yet.  We haven't even
19  received that as part of the production.
20       So we would try to put this on a tighter time
21  frame, whether that requires us to move to compel
22  immediately or to hopefully go through a process that
23  gets it resolved, we would obviously prefer the latter
24  but we just want to make sure that -- that the things
25  move ahead.
```

1           And like defendants, I think we would appreciate

2    the Court's guidance at least on the tax return issue and

3    the --

4               THE COURT:  Yeah.

5               MR. HART:  -- documents relating to other

6    entities owned by the Paynes, and I'm happy to sort of

7    explain to the Court why we think they're relevant in

8    this case.

9               THE COURT:  Thank you.

10          I do think that it would be helpful and then I'll

11   maybe go through these kind of backwards -- from 32

12   backwards to talk about specific individual requests that

13   I do have concerns about.

14          But, I mean the thing about -- so my comment is

15   not -- none of them have been about things produced.

16   They have been about how the response -- the requests

17   were responded to so I don't even know what's been

18   produced, or but the problem is that it really is

19   important to get those responses right so that you know

20   what everyone thinks you're getting and I -- and so that

21   is why actually I think it is productive to be answered.

22          And I understand I mean you have got a discovery

23   cutoff on July 7th so you don't have a pile of time to

24   get all this done and because this has already been

25   responded to and now we're kind of cleaning it up, I mean

05/04/2023      BARNS v. PAYNE      22-2433      21

1  I would hope that within maybe a week defense could get a

2  clean -- get a clean response back to defendant's.  You

3  think you can do that?

4          MR. DEMAREA:  Think we can do that, Judge.

5          THE COURT:  Yeah, to me that's reasonable.

6      Yeah.  So Friday, by next Friday.

7          MR. DEMAREA:  Your Honor, I'll just note -- I'll

8  just note, as I said, the productions that are being made

9  I mean, they are continuing and they're being made.

10      We have given another large one this morning.  I

11  sent -- Mr. Miller was included in the group, an email

12  this morning outlining exactly what we're still working

13  on and what will be forthcoming.

14      As far as documents from plaintiffs, we have had

15  none since the March 31 time frame, so I do bristle when

16  counsel tries to make me some kind of a bad guy in his

17  discovery efforts, when they have given us virtually

18  nothing.

19      So hiding the ball -- and I apologize to the Court

20  if that was your impression, that's not what is going on

21  here.  We're making the productions and you know,

22  admittedly, there was such a large set of documents it

23  was difficult at the time we were first formulating these

24  to even know the entirety of things that would be in the

25  category.

1          I think we can do that now and I think -- I think
2  redoing them is a good suggestion.
3          THE COURT:  And of course I'm not judging the
4  actual document production you made because I don't know
5  what you have done.
6          And the problem is that even if you in fact
7  produce everything that they literally asked for, the
8  responses still have to be understandable, the responses
9  themselves, so that the requester knows what they are
10  getting.  And what you think you are giving them and what
11  you think you are withholding and not getting them.
12          But I think we have actually talked enough about
13  that.  Let me make it -- let me look at a few specific
14  issues in these requests.
15          And really starting with 31 and 32.  I am going
16  to -- I'm going from the back forward just because this
17  is most -- where most of the ones I thought were kind of
18  discussable really are located.
19          Of course under Rule 26(a) the defense should have
20  already produced documents it knows it is going to use to
21  support its claims and defenses because that is required
22  by the law and the rule in fact it requires that response
23  be updated.
24          I do think that beyond that these two requests are
25  probably overly broad.  I don't know if they are --

1  [inaudible] and I think you can ask for documents that

2  support you know a particular claim or particular fact

3  that has been alleged.

4       And the fact that it is not time for trial yet

5  doesn't mean it is premature so I don't think it is

6  premature, so I do think that these requests are probably

7  overly broad.

8       What you are basically asking for is produce all

9  relevant documents, and this is only -- this is only one

10 degree -- these two requests are only one degree better

11 than that and I -- I feel like I probably would support,

12 if it were made in a different way, an overbroad request.

13      For example, your objection on 31 says, Could be

14 objections because it is all documents related to the

15 list of topics.  There aren't any list of topics.

16      Now, again, they are required already to be

17 producing everything that they expect to use to prove

18 their claims and defenses.  But beyond that, I think

19 those two requests are probably not basically something

20 you can enforce.

21         MR. MILLER:  Judge, if I could -- is it all

22 right if I respond just briefly for plaintiffs?

23      I -- I think that one of the issues here is that

24 these requests are essentially identical to requests that

25 defendants have made.  We had objected on, among other

1 things, breadth but, ultimately, when -- or I think even

2 before defendants went to the Court on those requests in

3 March we could agree to produce all documents consistent

4 with Rule 26.

5      I don't think we're asking for something broader

6 than that.  Obviously if they discover documents or

7 communications subsequent to that production they can

8 supplement that production.  But we want to make sure --

9 what we're trying to avoid is surprise.  And I think -- I

10 don't think that that's fair and I --

11      THE COURT:  Yeah, I -- [inaudible] I mean I

12 don't know if -- if any of you have been around other bar

13 members long enough that you can remember when the

14 original Rule 26(a) came out and it required a production

15 of all relevant documents to anyone's [inaudible].

16      In other words had to produce all relevant

17 documents to anyone's claims.  In other words, you had to

18 produce all relevant documents that are relevant to your

19 other side claims or defenses as well as your own.

20      And that didn't last very long and I think for

21 good reason and I think that was just a statutorily

22 overbroad request, or a rule overbroad request.  But if

23 you are just trying to get things that are relevant to

24 support defenses, that is already their obligation so

25 that ought to be what they are doing.

05/04/2023      BARNS v. PAYNE      22-2433      25

1        That doesn't mean that more things can't be turned

2  over later, but [inaudible] -- but this is not enough to

3  request anything that is relevant to your claims, the

4  plaintiff's claims, and of course you're entitled to

5  documents that are relevant to your claims, you're simply

6  not entitled to ask for them in that way other than that

7  it is too broad a request.

8        MR. MILLER:  Well, to the extent we were -- we

9  were -- the language is broad enough to imply that's what

10  we are asking for, we can just -- we'll -- I'll make it

11  clear now and make the representation that all we are

12  looking for are documents, communications, supporting

13  their defenses that they intend to rely on.  So 32 does

14  look a little bit broader in that is supporting the

15  defenses as set forth in the answer and what they intend

16  to rely on at trial.

17        31 is limited to what they intend to rely in this

18  lawsuit.

19        We're -- we're only asking for the documents they

20  intend to use in support of their defenses.

21        THE COURT:  Okay.  So -- so I guess at worst

22  then they are requesting [inaudible] so that's probably

23  not a problem.

24        Request -- request 29, I think the general topic

25  of that request is discoverable.  I think the any and all

05/04/2023      BARNS v. PAYNE       22-2433       26

1  pleadings and any and all documents, communications

2  produced I think the scope of what you are asking for is

3  likely too much.  But whether or not it is overly broad

4  or unduly burdensome or unproportional, it may be all

5  those things.

6        But I feel like plaintiffs did that.  I think I

7  understand why you are looking at these topics and I

8  think you're entitled to do some discovery about these

9  topics.  I -- I would hope that you could maybe drill

10 down and limit that request to some specific -- and that

11 wouldn't mean that if you got some stuff that was

12 responsive to what you are asking for, and it turned out

13 it was relevant to drill down further into the documents

14 with other types of documents that might be good, but it

15 just seems to me that this is going to be boxes of stuff

16 and what you're really looking for is -- for example, I

17 know one of the claims you have has to do with I don't

18 know was it was a conviction of one of the --

19        UNIDENTIFIED SPEAKER:  I believe that's right

20 for -- for fraud.

21        THE COURT:  And I don't even know whether

22 that -- the fact of that conviction, I am assuming isn't

23 a contested fact in this case.  And so how much detail do

24 you need about that is something that I have some

25 question about.

1       In other words, I -- I've let -- in the petition,

2  I read the complaint and it looks to me like -- and I

3  think what you are claiming, if I understand your claim

4  in that regard, is you made this investment without being

5  told that you had to have a conviction so the question

6  is --

7           UNIDENTIFIED SPEAKER:  That's right.

8           THE COURT:  And so the question is whether or

9  not that would have changed your opinion, if you had been

10 told that, by the way, you know, I have a conviction for

11 whatever it was, forgery or fraud, in state court and

12 whether that would have changed what you did.  The fact

13 of that, and whether you were told it of course are facts

14 and you can -- and they're relevant but I don't know that

15 every document and underlying pleading and detail about

16 that, you wouldn't have had all that of course at the

17 time.  And I don't know whether that is relevant or not.

18 Or whether --

19          UNIDENTIFIED SPEAKER:  Your Honor, we don't even

20 want that much material, so I think I agree with the

21 Court's view.

22          And what we can do is try to limit -- we're

23 looking at the phrase "any and all documents and

24 communications produced," that's a little broad and it

25 may be this is solved by -- by sort of being a little bit

1  more specific about what we're looking for.

2       We're really concerned about regulatory action and

3  arbitrations, things that aren't necessarily public,

4  criminal investigations, that sort of thing.  But

5  we -- we can try to be much more specific about what

6  we're looking for.  At least as --

7       THE COURT:  Yeah, well think about -- think

8  about why that is relevant to the case.

9       You know, I -- are these things that -- you know

10  obviously on the conviction, for example, if you simply

11  had been told, maybe that is all you needed to be told

12  [inaudible].

13       But if you're trying to collect this information

14  for some other purpose, I don't know if you think it's

15  going to be relevant to the credibility of someone's

16  testimony or something down the road, maybe that is a

17  little different but I -- you know, I just -- yeah,

18  you're really subject to do this so just look and see

19  what you need out of that.  I just thought that was a

20  little much.

21       UNIDENTIFIED SPEAKER:  Judge --

22       UNIDENTIFIED SPEAKER:  We'll do that.

23       MR. DEMAREA:  This may help the discussion as

24  well.

25       Since -- since this RFP was sent and answered we

1  have answered interrogatories on behalf of Mr. Payne

2  where he laid out kind of the facts and details and case

3  numbers of things included in this, included in the fraud

4  claim and fraud charge that plaintiffs keep referencing,

5  which has actually been expunged from his record, both as

6  to the arrest and the charge so and to the extent there

7  is public docket information, now I -- as we said, we

8  have queried our clients about this and it sounds to me

9  like there's nothing that they have, other than

10 attorney-client privilege things with -- with a lawyer

11 involved in some of this.

12      If there is -- if -- I mean, yeah, if Mr. Miller

13 narrows that and there is something specifically I can

14 look for and harvest, I can at least look for that.

15      But I feel as though the interrogatory will

16 probably give them quite a little bit of what they are

17 looking for through this RFP.

18          THE COURT:  I just felt like that was just --

19 again, I didn't feel like it was improper, I just felt

20 like the request was too broad.

21      I feel the same way about 28.

22      I think the subject area is proper.  I think

23 looking at the other businesses of the defense in this

24 case is probably legitimate but that's really a broad

25 request.

```
 1              MR. MILLER:  Here -- here, Your Honor, the -- we

 2    don't know exactly what we need and we don't really have

 3    time to go step by step to find out but what we know for

 4    sure is that the entities in which defendants have an

 5    interest have been intertwined since the time we bought

 6    our stake.

 7              For example, in 2022, according to what was once

 8    called the Audit Reports, now called a Balance Sheet that

 9    was produced to us as a result of that Audit Report, it

10    records loans from an entity called Hard Body Coaching

11    incurred -- I think there was an existing $8 million loan

12    allegedly in 2021.

13              In 2022 that went from 8 million to 62.7 million.

14              There's a loan from a Hard Body Energy that is

15    incurred in 2022 for 59.2 million.

16              There are loans from entities called Online

17    Empire.  We don't know the extent to which the Paynes are

18    involved in it.

19              And from Payne Capital, which is highly suggestive

20    -- and these are liabilities that they've -- they've

21    already sort of identified for us, we need to know you

22    know what those entities are, when they were formed, what

23    the terms of their formation were -- were, what they do,

24    what the terms of these runs are, particularly because

25    with respect to other entities, we've received disturbing
```

1  phone calls and text messages from third parties alleging

2  that other entities are being used by the Paynes to

3  engage in a rebating scheme with Hard Body, or a Ponzi

4  scheme.

5       And so we have made allegations of wastage, fraud,

6  of false reporting.  We sort of -- we don't know of what

7  all the entities are but we do know that there are

8  multiple entities.  And we don't know what we need about

9  those entities but we do know that they are -- they have

10 significant involvement in the company at issue in this

11 case.  So here's a place where I do think the breadth of

12 the request is -- is appropriate.

13      THE COURT:  Well, I think your request may well

14 be broad.

15      This almost sounds like a request that you're

16 making with a request for documents that might -- and is

17 there any [inaudible] on those questions?

18      UNIDENTIFIED SPEAKER:  We have.

19      THE COURT:  [Inaudible] and so getting documents

20 that are relevant -- you know, the documents you're

21 looking for, even though I agree with your description,

22 which I appreciate by the way, I agree with your

23 description that it might be a lot of documents.  And

24 that it might be -- end up being kind of a broad request.

25      It will be hard to be as broad as [inaudible] to

 1  this.  It just

 2          MR. MILLER:  It could be we could narrow it, we

 3  could come up with categories of documents.

 4          THE COURT:  I --

 5          MR. MILlER:  Documents showing the investors the

 6  assets and liabilities the transaction with his Hard

 7  Body, I think we could -- we probably still would have

 8  relatively large productions but we would have a little

 9  more specificity.  We don't need every -- you know

10  every -- every single document communication that the

11  company has ever generated.

12      You could read the request that way so I think I

13  understand Your Honor's -- Your Honor's problem.

14          THE COURT:  Okay.  So you know 27 is, by the

15  way, I think is a good request because it is a great

16  example of "how any and all documents" phrase is fine

17  because then it is limited by the description of what the

18  request is that you are -- what is being requested.

19          UNIDENTIFIED SPEAKER:  I think that -- I

20  think -- I think we could style 28 the same way.

21      And then list the categories or documents or

22  topics we're looking for.

23          THE COURT:  In 26, my guess is I don't know

24  enough facts to judge that one.

25          You must have some reason to believe that these

1  particular transactions, and of course you said including

2  and not limited to, at least it would be -- there are

3  different transactions you listed, do you have some

4  reason to believe those are tied to your complaint in

5  some way?

6           MR. MILLER:  We do.  We think that these

7  purchases, including, for example, the purchase of a

8  luxury car, and other property we know were being made

9  with company funds.

10          We don't know for sure with each specific type of

11 property or what's been acquired since but we do have an

12 allegation that there's been wastage of the company's

13 assets and I think this goes directly to that question.

14 And, again, there's a protective order in the case.  To

15 the extent it's personal you know, confidential,

16 financial information, it's not going to go anywhere

17 beyond this case.

18          But we do think it's relevant to those -- the

19 wastage claim.

20          THE COURT:  Okay.

21          MR. DEMAREA:  So, Your Honor, on that one, one

22 set of information that's forthcoming is the set of

23 documents that the accountants reviewed, the revised

24 financial statements.  And we've agreed to give that,

25 although we were in the process of getting it, we are

1  going to mark it, we're going to produce it.

2       And -- and our information is that an FTAs and the

3  things that they're talking about here have not been

4  purchased with company money.

5       And the rub here becomes -- let's say that

6  Mr. Payne purchased an MFT with his own money or through

7  a different company that the plaintiffs have no claim to.

8  That is his property, you know it's his personal property

9  and wouldn't necessarily have anything to do with the

10 plaintiffs or their claims or Hard Body supplements, so I

11 don't feel it's appropriate to shift the burden to

12 defense to disprove an allegation by the plaintiffs if

13 what -- if -- and remembering that we're producing this

14 underlying financial information for their review,

15 that --

16       THE COURT:  You really -- you really haven't

17 produced any underlying financial information except for

18 that summary that you keep -- that you've described

19 several times.

20       You haven't let them into the books of the company

21 or anything else, right?

22       They haven't looked at the direct evidence yet,

23 the direct information about their claim?

24       MR. DEMAREA:  No, what Your Honor said is

25 correct.

1          We are not only in communication with the

2    accountant but he is in the process of giving us all the

3    underlying financial information that Mr. Payne gave to

4    him before the lawsuit was commenced for him to do his

5    financial review of the LLC.

6          THE COURT:  And to be clear, I will support in

7    discovery IN this case the production to the plaintiffs

8    of all financial documents and information regarding the

9    company, whether it was given that accountant or not,

10   including the bank returns, including any ledgers they

11   are keeping.

12        In other words, I'm not going to let the

13   defense -- the defendants filter what they give the

14   plaintiffs through what they gave an accountant to get a

15   result.

16        I'm not --

17        MR. DEMAREA:  I -- I can you understand that,

18   Your Honor.

19        THE COURT:  I won't let it..

20        MR. DEMAREA:  Requests though then go to my

21   clients individually and another company that they own,

22   and another company that they own, and that's where it

23   gets not only excessive but unreasonable.

24        But you know, we talked about proprietary -- yes,

25   there's a confidentiality order in the case but that

1  doesn't mean we get to conduct asset discovery

2  prejudgment on an entire person's entire net worth and

3  financial status.

4        So I can understand the Court's position and

5  respect that as the LLC.  I would have to quarrel if Your

6  Honor were saying you were inclined to open it up to any

7  and all money accounts, possession, you know, anything

8  owned by Lawrence and Patricia Payne.

9        THE COURT:  No, no, no.  What I'm saying

10  is -- what I am saying is -- what I am sympathetic to is

11  and what the plaintiff is trying to do that because they

12  haven't had general and complete access to the actual

13  company books and financial information.  Because of that

14  now they're forced to do this discovery on things they

15  are guessing might have been related.

16        And in fact you might be right that some of these

17  things like you [inaudible] if they -- if they had, if

18  they had complete access to the -- to their company's

19  financial information in such a way that it was clear

20  that this stuff had nothing to do with it, then the

21  ability to protect discovery of that might be much

22  better.

23        But because they've been -- they've been hampered

24  from getting generalized information, and of course I

25  understand that there's an -- account in the actual

1  complaint in this case, but that fact doesn't prevent

2  them from getting almost essentially the same information

3  in discovery.  I think they're going to get any way.

4      But you see the problem, because I mean they don't

5  know whether any of this stuff is related to the company

6  or not because they haven't been able to look at stuff

7  that they're plainly entitled in discovery, whether they

8  are entitled to an accounting or not, but whether they

9  are entitled to discovery to see those things because

10  there has been a limited amount of financial information

11  provided to them about the company.

12      But if they had -- if they had general and

13  complete access, they were satisfied and the Court were

14  satisfied, if they had general access to all the

15  finances, though they could, you know, they could look

16  and see what looks like the money came and went, and it

17  was clear this stuff doesn't show that,  then drilling

18  down to these other companies and other entities and all

19  this other stuff, I -- I may well, you know, protect the

20  defendants from that.

21      But it's hard for me do it wherein -- wherein

22  they're kind of forced to do this.

23      MR. MILLER:  Yeah, so -- if I could just add,

24  Your Honor, on this point of money moving around, the

25  only financial information we received is that 8-page

1  so-called Profit and Loss Statement.

2       I went through the loans allegedly made and

3  recorded as long-term liabilities of Hard Body but I can

4  only read what is on this sheet is that loans have been

5  made to other entities, including Payne Capital from

6  this -- from this company.

7       So obviously if money is just being moved from one

8  LLC to another, we will be able to see that on an account

9  statement on the books and records of the company.

10 Because we don't have that, we need information about

11 those other entities which they've refused to provide in

12 their interrogatory response.

13      I know that's not before the Court but just for

14 the Court's information they have refused to identify

15 those other entities, or discuss entities specifically

16 identified by us.

17      But we need the documents of those entities and we

18 obviously, in the short period that we have, we do need

19 to just look directly at their personal finances because

20 that is the position that they put us in.

21          THE COURT:  I mean I -- I think defense that the

22 problem is that it is hard for me to see why the Court

23 would keep them from going after this indirect evidence

24 when they're not being allowed to see the direct

25 evidence?

1              MR. DEMAREA:  So as a starting point, my

2    belief -- and again, I haven't seen it, but this is my

3    belief, is that the underlying financial information

4    we're obtaining from the accountants and are producing

5    contains this sort of information that counsel is asking

6    about.

7              I have to wait and see it, like you, but you know

8    this is what I meant about some of this being premature

9    because I believe there will be information about these

10   kind of topics in there.

11             Now, will it be the extent of the detail he wants?

12   I don't know but that's only because I don't know.  You

13   know, I don't know what's there.

14             THE COURT:  I could -- I could tell you now

15   though that ultimately if they have asked you for like

16   the bank records, and whatever other you know specific

17   kind of -- of base records the company has if they show

18   where their money is going and coming from, then I'm not

19   going to be satisfied to say, Here's what we gave the

20   accountant in response.

21             In other words, unless -- unless those are the

22   same -- all the same things, all the -- you know,

23   completely the same thing.

24             MR. MILLER:  Well, and that's the answer we

25   need, Your Honor, because as -- as was pointed out

1  earlier in responses, there is a reliance on these

2  so-called underlying financial documents submitted to

3  this Mr. Goldberg, who again is not a CPA, we don't know

4  what his credentials are but I can tell you that I was

5  told almost two months ago when we raised this issue on a

6  telephone call with plaintiffs' counsel that they had

7  these underlying documents that they might be able to do

8  what we got the ultimate 8-page statement and they were

9  just waiting on confirmation from the clients that they

10 would agree to produce them voluntarily.

11      And now the last status update we got is that they

12 are working with Mr. Goldberg to get that set of

13 documents.  And it's almost two months later.  So not

14 only is -- is that set of documents we have no idea what

15 it is, or when we're going to get it, or what it

16 contains, at this point in the case it has the status

17 like the audit of being mythological.  So I don't think

18 that they can wait or force us to wait, if they allow the

19 Courts to wait to direct discovery from the Paynes until

20 they produce something that may or may not exist in the

21 first place.

22      So that we can see what it may or may not contain.

23      MR. DEMAREA:  Judge, I don't know why Mr. Miller

24 insists on continuing to act like counsel is somehow part

25 of this issue.

1       My partner Bob Gilbertson was on a phone call with

2  him and did not say, we're housing documents for this

3  accountant.  We are in the process of getting them.

4       I have spoken to him repeatedly over the last two

5  weeks, even before that.  We are now in the process of

6  waiting on information.  They have a link we have given

7  him.  There is no mystery about where we are in the

8  process.

9       In fact I updated Mr. Miller about it this morning

10  in an email.  So I don't know why his case feels better

11  to him by somehow villainizing me or my law partners.

12       THE COURT:  Well, I have no -- I'm not going to

13  weigh in on any of that.

14       I mean I -- when I -- when I read your responses,

15  defense, they looked obstructive to me.  They looked like

16  responses filed in a way that where you are following

17  your clients' instruction about what information he wants

18  provided beyond what was completely relevant in this

19  case.

20       Now my impression may be wrong and it may be that

21  that's not what is going on but if -- if the plaintiffs'

22  counsel is developing an attitude based on that

23  impression I guess at the moment I sort of share share it

24  and I'm happy to be dissuaded of all that.

25       It wouldn't -- wouldn't be the first time that

05/04/2023      BARNS v. PAYNE      22-2433      42

1  some client that has been hard to deal with and hasn't

2  provided what they should.  And you are in the position

3  to have to defend them from that so I don't know what is

4  going on but I -- you know, there's -- the responses, I

5  don't know.

6        I am just going to admit to you that I -- I have

7  similar reactions as to the nature of these responses.

8        Now as far as your relationship with each other,

9  you guys obviously need to make that work out because

10 that's going to be better for your clients and better for

11 the Court and better for you all and I don't have any

12 reason to believe that counsel are doing anything

13 improper.  But other than the style of some of these

14 responses.

15        But I don't know, I am trying to think if there is

16 anything else that the tax return thing is kidn of the

17 same thing as the MFT thing.  That's something that I

18 don't normally -- I would normally allow in this kind of

19 a case.  That extent of discovery about the tax

20 statements unless they would be beyond what of course tax

21 information -- the reporting they make between the

22 company at issue here, I generally wouldn't allow that if

23 I felt that -- that unless the evidence before the Court

24 and -- showed that -- that those funds needed to be

25 traced and the tax returns were the best way to do that

1  or, two, that they wanted to have a particular access to

2  the foundational -- to credible foundational financial

3  information in such a way that it was important to go

4  over the tax return to figure that out.

5      In other words, that's kind of a, I'm lecturing

6  about the priorities that I have been provided that I am

7  not unwilling to in a lot of cases.

8      And I'm not sure I know enough in this case to

9  know whether or not that is going to be required.  It is

10 really kind of in a similar category is going to defense.

11     I feel like if the plaintiffs generally have some

12 generalized production of they felt like they

13 basically -- you know, the company that they are members

14 of had laid bear all the -- all of their client's

15 information of any description, that the Court can look

16 at that in microscope [inaudible] so they might not.

17     UNIDENTIFIED SPEAKER:  I think, Your Honor, that

18 this falls into both of the categories that you

19 described, tracing, as with the NFPs, because we didn't

20 have the underlying documents but we do know enough to

21 know that there are multiple entities that just based --

22 just looking at this so-called Profit/Loss Statement, it

23 does look like money is being shuffled through the

24 various entities.

25     The tax returns aren't perfect mechanism for

1  looking at that but you know at the very least as opposed

2  to a piece of paper generated by defendants with no

3  accountability it would be a piece of paper that had to

4  be filed with the IRS, which to some people is a

5  deterrent.  I think that's one thing.

6       The other thing is we haven't gotten to look

7  obviously at those primary documents and we don't have

8  time to wait to see how fullsome their production would

9  be and I think in this specific case I think that at

10  least all reporting related to Hard Body and any

11  associated entity is relevant because we've got to test

12  the bona fides of their financials and because of the way

13  you know they have made an assertion about the ownership

14  of the company, the way their own membership interests

15  were reported to the IRS.  Which is relevant in their

16  case because they actually controlled the reporting, may

17  or may not have issued themselves K-1s, may have issued K

18  ones to others, so we do think this is the rare case

19  where the tax returns in toto should be produced.

20       Or certainly parts of them.

21       THE COURT:  Yeah, and that's what I am saying, I

22  don't know whether it is all or parts or any but, again,

23  I feel like we're chasing pretty backwards in this case

24  because we can't rule it down on the primary -- primary

25  information.

1          I think as a matter of law, that if there are

2   corporate entities that share ownership with -- with Hard

3   Body, and if there are [inaudible] made back and forth

4   between those that money is going to be allowed.  I would

5   think that is going to be allowed in the lawsuit.

6          You know, [inaudible] that the law does treat that

7   kind of transaction with additional scrutiny.  And

8   I -- and so I think you can expect that there's money

9   really going back and forth between other entities owned

10  by the defendant but there is going to be a lot of

11  [inaudible] around.

12         That's just -- I think that is just how this is

13  going to come out.  But I think that's -- as a matter of

14  discovery, but also is also a matter of substantive law

15  which is not my job on this case, that is Judge Peter'

16  job on this case but that is pretty clear about the law.

17             UNIDENTIFIED SPEAKER:  Your Honor --

18             THE COURT:  He is -- is there some other

19  particular request that, especially with [inaudible] that

20  you feel like you have made an objection to that you are

21  really concerned about.

22             MR. DEMAREA:  There is -- there's one.  There is

23  one, Judge.

24         I'm looking at request 18 and I'm thinking there

25  is a later one, I haven't put my finger on it, request 18

1  says, Any and all documents and communications relating

2  to the manufacturing and/or sales data of the companys'

3  products and then we have kind of said as -- in

4  our -- defendants' position there, you know, there

5  would -- there will be information about sales within the

6  underlying financial data, we believe, but I mean, this

7  case is not about manufacturing, it's not about

8  individual sales, and so the idea that a company of this

9  size needs to be producing all sales, I mean every

10 individual sale?  Every individual -- and you know,

11 manufacturing data?

12      I -- I do view that as not only overly broad but

13 just unreasonable and I am not understanding a reason why

14 the company would need to go to that level of detail.

15      Now as I said, there may well be sales information

16 contained, for example, the documents we had today that

17 are being produced today, there is some sales information

18 in there that was available to plaintiff Nathan Barns as

19 set up when he originally came to the company to work

20 with them, but and then I would believe there is some

21 sales information contained in the -- in the underlying

22 financial data.

23      But to me it was the idea that we're tasked with

24 going out and producing all manufacturing documents,

25 communication, and every individual sale just felt

1  extreme.

2         THE COURT:  And I'm not sure what the plaintiffs

3  are looking for as far as all communications and

4  documents, I mean I -- and I don't know what kind of

5  documents this generates.

6       I assume something comes like an Amazon product,

7  you get some kind of Amazon about the purchase and I

8  don't understand, are there thousands of those?

9         MR. DEMAREA:  Right.  And -- and I -- I can't

10 truthfully tell the Court are reports generated to every

11 single sale.  I just see like monthly statements that may

12 well contain that within the documents being produced

13 today.

14      And, again, that's a -- that's a kind of a slice

15 in time.  But, yeah.  I mean that's my concern.  And that

16 a manufacture -- oh, the other one, Judge, is inventory.

17 There's a similar request that sort of encompasses any

18 and all documents communication about inventory.  Again,

19 I just, that's just a massive set of things.

20      This company sells jars of nutritional supplement

21 so and we want to get in to every piece of inventory in

22 the company?  I don't see how that is relevant to the

23 claims.

24         MR. MILLER:  If I could respond to that.

25         THE COURT:  Yeah, yeah, I don't know enough

1  about this issue to know whether or not it is or not.  Go

2  ahead.

3          MR. MILLER:  I thought it would be helpful to

4  say first the inventory is listed first on the so-called

5  Profit and Loss Statement at the end of 2022 which was

6  $13.9 million which is the most significant asset of the

7  company by far that is listed here.

8          And I actually have a suspicion that it is not a

9  massive amount of documents; there may be no documents.

10         One of the allegations that was in the complaint

11 from the beginning is that sales data was withheld from

12 the 50/50 partners in the company, as soon as they began

13 asking questions about it and asking questions about how

14 money was being -- what was coming into the company and

15 how it was being sent.

16         We have since then, just in the last few weeks,

17 learned from third parties that defendants may have been

18 operating a rebating scheme where they inflated sales of

19 the product that was never delivered to anyone using

20 off-sight [inaudible] and that nothing is in fact being

21 sold to anyone and there is no inventory.

22         That goes to operations of the company, the bona

23 fides of the financials that have been produced and the

24 miss management of the company, the liabilities of the

25 company which we are again are 50/50 members so overall

1  extremely relevant to the claims that are before the

2  Court.

3          And so if there is an enormous, voluminous

4  production that has been identified not by -- because,

5  again, I'm not in anyway disparaging defendant's counsel,

6  if they come to me and say, Here's what we are actually

7  looking at, I've seen it, I've seen the documents, I've

8  seen how voluminous it is, I have seen the databases, and

9  what can we do to run reports on this, to come up with

10 sampling?  There is many ways to decide that is

11 voluminous but certainly the category documents are

12 relevant and we absolutely need to know whether all of

13 these many, many, many documents from Amazon orders, or

14 whatever else, actually exist.

15         Because right now I can tell the Court actually

16 obtaining this product is virtually impossible.  So you

17 know this is discovery and I think it goes to the

18 fundamental issues in the case.

19          THE COURT:  So, I mean I essentially agree with

20 that.  I mean when you get a question like this the issue

21 really is fullsomeness and proportionality, I mean those

22 are two sides of the same coin.

23          But the issue is really fullsomness.  I think

24 the -- their obligation on the responder is to figure out

25 what it is they are asking for.  And how big it really

1  is, how many is really is and [inaudible] without doing

2  it.

3       And then go back to your side and say, well, I

4  looked at this and here's what we are looking at.  We

5  think that is the number.  Really talk about what there

6  is and if you can come up with some agreement about what

7  you are going to produce out of what we request.

8       Because I don't have enough information, I'm not

9  sure any -- any of us do about you know, without -- we

10 can theoretically about what might be included in this

11 kind of a request but I don't know, defense, if you

12 actually know if you complied with this what that would

13 mean You would have to -- what you would have to see if

14 you're able and really be there.

15       MR. DEMAREA:  Yeah, I heard what Mr. Miller said

16 and I'm willing to have that conversation with him --

17       THE COURT:  Okay.

18       MR. DEMAREA:  -- after exploring this.

19       THE COURT:  Yeah, I mean detective work on the

20 [inaudible] to figure out what is out there because

21 obviously if you come back and say, well it finds out

22 that there [inaudible] it wouldn't be very

23 burdensome -- burdensome to produce it.

24       But if it turns out we have got individual files

25 of 13,000 Amazon purchases then that -- you know, nobody

1  would want that.  And so there is nothing we can do about

2  it.  And so there is five, then we can draw, of course

3  then the plaintiff will have the chance to figure out how

4  it is created and stuff and I think that none of us know

5  it is going to be required there.

6       I -- I agree with the general topic it's relevant

7  but I can't tell if it is burdensome -- burdensome or not

8  on what we know now.  Unduly burdensome.  Excuse me,

9  unduly burdensome, not burdensome.

10      Have you all done depositions in this case?

11      UNIDENTIFIED SPEAKER:  Not yet, Your Honor.

12      UNIDENTIFIED SPEAKER:  We have not.

13      MR. MILLER:  We have noticed a rule 30

14  deposition of the company and company is in the process

15  of retaining separate counsel and we're trying to work

16  out times for that if counsel were not available or

17  [inaudible] which I think is.

18      THE COURT:  You're not supported by the idea of

19  the document is before we have to do that but -- but in

20  the end, you'll probably have to clarify some of what you

21  have gotten by that kind of discovery produced, I think.

22      MR. MILLER:  That's what we had in mind, Your

23  Honor.

24      THE COURT:  Okay.  Well, I have probably

25  cluttered this up really badly.

 1          I think the flip side of the coin to allowing the

 2    defense to re-answer these requests is to recognize that

 3    the part should be allowed to re -- to narrow it or

 4    reword some of them to talk about because I'm just not in

 5    in the position to having to get rule on these objections

 6    down the road.

 7          If you end up filing motions to compel you can

 8    look at some things that have been -- have been submitted

 9    and would include some of these things.  And on both

10    sides.  So I'm not just ruling that all objections were

11    waived because of the boilerplate stuff.

12          And I'm not required to rule that the plaintiff

13    can't do anything because their request was pretty broad

14    but I think if you can go work on this and get something

15    to work with more specifically.

16          I would -- I would like to do -- because you're

17    going to generally at least be responses, perhaps even

18    some requests, I would recommend that we do just kind of

19    project again before motion practice if we get there.

20          Also because you do such a great job of sending me

21    these summaries.  I don't normally get in these things

22    but I appreciate that.  I know I complimented you on that

23    in March but I would -- I would like to be able to get

24    just another shot.

25          I'm not saying I am going to -- I'm not going to

1  say that you haven't complied with the informal

2  conference rule if you don't do that.  I'm not going to

3  say that but I -- I was thinking about you know

4  requesting thinking over one or two of potential

5  statements of requests and then responses.

6        MR. DEMAREA:  Your Honor, Andy DeMarea here.

7        Since we have been talking about defense reserving

8  responses within a week, and I don't know, you know, how

9  long plaintiffs will need, but if they are going to

10 reformulate any, I would kind of like to know that before

11 we send answers.

12       Could we do that like in three or four days?

13       And then in ten days from now I serve the

14 responses?

15       THE COURT:  I think we can --

16       MR. MILLER:  It would be a second round --

17       THE COURT:  Part of the --

18       [Indiscernible crosstalk.]

19       MR. MILLER:  I think we can turn around a

20 request much more quickly than that.  If not today then

21 by tomorrow.  And since we're talking about reformulating

22 requests, we're actually talking about a very small set

23 from a larger set, then I think that Friday deadline, I

24 don't think we'll inconvenience or prejudice the

25 defendant on how long we will take.

1        We will have them out by tomorrow.

2            [Indiscernible crosstalk.]

3            UNIDENTIFIED SPEAKER:  -- stand by the request,

4    we will let them know.

5            THE COURT:  Let's talk when the responses get

6    done within a week of the request.

7        And I guess in that regard I don't want to -- by

8    imposing that kind of deadline, I don't want the -- which

9    is essentially because you don't have a chance to talk

10   about things.  So be sure and do that when needed.  And

11   if that slows you down then it just does but I just -- I

12   just -- I think collaboration on some things is going to

13   end up being really important.

14       So let's not -- let's not give you enough time to

15   do that, especially after a response was submitted.  You

16   time you got to work together in I am citing some of the

17   problems [inaudible] was a great example.

18       And so  [inaudible] that is obviously request -- a

19   lot of information gathering at the time of the defense

20   and collaboration to get the information published

21   [inaudible].

22       Okay, I don't know, I'm exahausted, I don't know

23   about you guys.

24           UNIDENTIFIED SPEAKER:  We appreciate, it Your

25   Honor.

1          THE COURT:  Yeah.  So, I don't know if I

2  mentioned this at the beginning.

3          I did record this session and I also did the one

4  in March.  I'm recording most of these now -- all of my

5  cases because, as you probably know I'm going being

6  replaced in the office so I don't need the actual pill so

7  what am I going to do with the recordings is so she can

8  go back and listen to most of the stuff if she has the

9  penchant to do that.  She has my sympathy about that but

10  I am trying to -- I'm trying to leave as many bread

11  crumbs as I can through some of these things.  But

12  hopefully you will be able to work through all this by

13  then.  I mean the pretrial conference isn't set until

14  August 7th, and I am here then.  I am really hoping

15  getting this case through the pretrial order.

16          But let me know if and when I can help more and of

17  course that assumes facts not in evidence but and let me

18  know what else can I do and if you have problems.

19  Otherwise let's go after and see if we can figure out

20  what is going on in the facts in this case so we can get

21  on with them.

22          UNIDENTIFIED SPEKAER:  Thank you, Judge.

23          THE COURT:  Okay.  Thank you.

24      (End of proceedings.)

25      *****************************************

```
1                    C E R T I F I C A T E

2

3       I, Jana L. McKinney, certified shorthand reporter,

4   certify that the foregoing is a correct transcript from

5   the official electronic sound recording of the

6   proceedings in the above-entitled matter.

7       Dated this 13th day of August, 2023.

8

9

10                  s/ Jana L. McKinney_____

11                  Jana L. McKinney
                    United States Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1
<u>I N D E X</u>

2
<u>PAGE</u>

3

4
REPORTER'S CERTIFICATE                          56

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25