UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATHAN BARNS, et al.,

     Plaintiffs,

     v.                                  Case No. 22-2433-HLT-BGS

LAWRENCE PAYNE and PATRICIA PAYNE,

     Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO COMPEL

This matter comes before the Court on Plaintiffs Nathan Barns, Susannah Kilpatrick, and Darren Kilpatrick's (hereinafter "Plaintiffs") motion to compel.  Doc. 76.  Defendants Lawrence Payne and Patricia Payne (hereinafter "Defendants") oppose the motion arguing that the motion is untimely and does not comply with Local Rules, and even if the motion was timely, the disputed discovery requests are irrelevant, overly broad, or vague.  Doc. 80.  For the reasons stated herein, the motion is **GRANTED in part and DENIED in part.**

### I.    Background Facts

The facts of the case are hotly contested between the parties.  For the purposes of this order, the Court will take the facts from the Plaintiffs' Complaint.  *See* Doc. 1.  Defendants founded Hardbody Supplements LLC ("the Company") which is a dietary supplement company that offers products such as protein powders, pre-workout mixes, and weight loss plans.  In 2016, the Defendants executed an Operating Agreement which provided that each Defendant would own 50% of the Units in the Company.[1]  Sometime in 2019, Lawrence Payne approached Nathan Barns about entering into a business relationship with each other.  Nathan Barns, who is a certified

---

[1]The term "Units" is used to identify equity interest in the Company.

financial planner, considered several offers from Lawrence Payne.  After negotiating for several months, Mr. Barns inspected the Company's financial statements and traveled to see its operations.  In light of the financial statements and Defendants' representations, a final agreement was purportedly reached whereby the Plaintiffs would become 50% owners[2] of the Company in exchange for $500,000, payable in four installments.

On May 6, 2020, Plaintiffs and Defendants allegedly drafted a new Company Operating Agreement to create a new class of Units for outside investors and fundraisers.  The new Operating Agreement created new classes of "Units" and recharacterized voting interests, which resulted in changes in the ownership interest in the Company.[3]  Notably, the new operating agreement created "A-Class" voting interests as well as a new "Class-C" share.  Plaintiffs and Defendants allegedly received "A-Class" voting interests.  As a result, Plaintiffs allege to have received a non-dilutable 50% of the voting interest in the Company, which requires their approval or delegation before taking any material action.  They also allege that their status granted them rights to access and inspect the Company's accounts and records and the right to call a Meeting of the Members pursuant to the Operating Agreement.

Around 2020, the parties' business relationship began to deteriorate.  There was an agreement between Plaintiffs and Defendants that all the Company's financial statements would be shared via DropBox so all Members could access and review them.  Plaintiffs claim they were provided both inaccurate and incomplete financial sales information.  In addition to limited access to Company records, Plaintiffs also make numerous allegations of self-dealing and improper

---

[2]Nathan Barns purportedly received 25% equity in the Company while Susannah and Darren Kilpatrick each received 12.5% equity.

[3]The new ownership and percentage interests were as follows: (1) Lawrence & Patricia Payne 49.725% -A; (2) Nathan Barns 24.8625% -A; (3) Darren Kilpatrick 12.43125% -A; (4) Susannah Kilpatrick 12.43125% -A; (5) Brett Malinowski 0.3% -C; and (6) Curtis Rice 0.25% -C.

management of Company funds.  For instance, they allege Defendants made distributions of at least $500,000 and $1.5 million to themselves in 2019 and 2020, respectively.  These distributions were allegedly done without the approval or knowledge of the Plaintiffs.  Plaintiffs accuse Defendants of using the money from these distributions for personal expenses and purchases such as purchasing luxury vehicles and expensive Non-Fungible Tokens ("NFTs").[4]

After objecting to how Defendants were managing company funds, Plaintiffs demanded an accounting and the right to inspect the Company's books and records.  A written demand for inspection was made on November 12, 2020.  Shortly after the demand, Defendants cut off Plaintiffs' access to financial statements and sales data.  Defendants then claimed that Plaintiffs were not actually voting members in the Company, but the Operating Agreement only conferred a passive, non-member interest which did not entitle them to the right to inspect the Company's records or any other rights available to Members.  Since Defendants did not believe Plaintiffs were full Members in the Company, they did not grant them access to information related to the Company's financials, operations, or activities.

On May 17, 2022, and pursuant to the Operating Agreement, the Plaintiffs gave written notice of a "Meeting of the Members" which was to be held via zoom on May 31, 2022.  The meeting's purpose was to address improper distributions, lack of access to books and records, and the overall management of the Company.  Defendants responded to the notice on May 26, 2022, which reiterated their position that Plaintiffs only have a passive interest and are silent investors that do not have rights held by the Members.  Instead of granting access to the Company's books and records, they offered to go through the financial statements with the Plaintiffs so long as attorneys or other third parties were not involved.  Defendants did not attend the "Meeting of the Members."

---

[4]NFTs are unique cryptographic tokens that can represent digital or real-world items like artwork or real estate.

In the months after the first attempt to schedule a meeting, Plaintiffs attempted numerous times to schedule phone calls with Defendants' attorney or to schedule another meeting to discuss the management of the Company.  Despite a stated desire to work towards resolution, Plaintiffs allege Defendants were largely unresponsive and merely repeated their position that Plaintiffs do not have the rights as a member pursuant to the Operating Agreement.  In July of 2022, Defendants represented to Plaintiffs that a third party was auditing the Company's financials and a report would be provided to Plaintiffs.

Plaintiffs brought suit on October 21, 2022.  They allege claims for (1) breach of contract; (2) fraud and fraudulent inducement; (3) breach of fiduciary duty; (4) unjust enrichment; and (5) conversion.  Plaintiffs also request an order of judicial dissolution pursuant to K.S.A. § 17-76,117(b) and an order to turn over all books and records of the Company for inspection as well as an accounting for the purposes of judicial dissolution.  The Court entered its first scheduling order on January 9, 2023.

Plaintiffs served their initial requests for production of documents on February 17, 2023.  Defendants served their initial responses on March 20, 2023.[5]  Plaintiffs determined the responses were deficient and began meeting and conferring with the Defendants regarding the responses.  The parties have differing views regarding the nature and effectiveness of the meet and confer efforts.  Plaintiffs alleged that Defendants' document production was inadequate, unresponsive, or in some instances, non-existent.  In an attempt to respond to the discovery requests, the Defendants later produced the report generated from the third-party audit.  The details of this audit as well as the details surrounding the audit are unclear; however, Plaintiffs assert the report is wholly insufficient and not responsive to their requests.  After some back and forth, the parties eventually engaged the

---

[5]Plaintiffs also served their first set of interrogatories and supplemental (second) requests for production on March 28, 2023, and March 29, 2023, respectively.  Those sets were both responded to on April 27, 2023.

Court for a pre-motion conference pursuant to D. Kan. Rule 37.1(a) to discuss Defendants' responses and objections to Plaintiffs' initial requests for production.  Magistrate Judge Kenneth Gale conducted the conference on May 4, 2023, and advised the Defendants that most of their objections were not meritorious.  However, he also advised Plaintiffs that some of their requests were not sufficiently tailored.  As a way to help the parties work through the issues, he suggested the Plaintiffs amend a number of their initial requests for production and the Defendants serve amended responses to those amended discovery requests.  The parties agreed to this plan of action. After Defendants served their amended responses, Plaintiffs claimed they were still deficient. Shortly thereafter, defense counsel moved to withdraw from the case.

The case was stayed on June 13, 2023, to allow the Defendants to retain new counsel. Defendants' new counsel entered their appearance on July 12, 2023, and the Court held a new scheduling conference on August 14, 2023.  The Court advised the parties to discuss the on-going discovery issues during the parties' Rule 26(f) conference so that new counsel could get up to speed and to potentially help facilitate resolution.  During the August 14, 2023 scheduling conference, Magistrate Judge Gale informed Plaintiffs that he considers the pre-motion conference requirement satisfied regarding the discovery previously addressed and that they may file a motion to compel if they deem it necessary.  After the scheduling conference, the parties continued to meet and confer; however, the parties differ on what those efforts consisted of and the scope of those discussions.

Defendants produced over 50,000 documents on August 9 and August 14, and a supplemental production of around 3,000 documents on September 25, 2023.[6]  Plaintiffs characterize the production as a "document dump" and not compliant with the Federal Rules.  They maintain that all production to date is inadequate as to both form and production.  Plaintiffs initially

---

[6]It is not clear whether the rolling document production was responsive to the initial requests for production or also the supplemental requests for production.

filed their motion to compel on October 25, 2023.  That motion was denied without prejudice because the brief exceeded the page limitation prescribed by Local Rule.  Plaintiffs filed a compliant motion on October 30, 2023.  The Court has reviewed the parties' briefs and is prepared to rule.

## II.   Legal Standard

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case.  *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  *See also Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

A party may file a motion to compel when the responding party fails to permit discovery.  *Sperry v. Corizon Health*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *3 (D. Kan. Sept. 22, 2020).  The initial burden rests with the party seeking discovery, but the moving party need not address all proportionality considerations.  *Id.*  Once the initial burden has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).  Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."  *Carter v. Union Pac. R.R.*, No. 20-2093-DDC-KGG, 2021 WL

1250958, at *2 (D. Kan. Apr. 5, 2021) (citing *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004)).

## III.    Analysis

Plaintiffs request the Court to: (1) order the Defendants to organize their production pursuant to Fed. R. Civ. P. 34(b); (2) order the Defendants to produce responsive documents to discovery requests pursuant to prior agreements between counsel[7]; (3) overrule Defendants' objections to certain responses to their requests for production[8]; (4) order the Defendants to produce responsive documents to their supplemental discovery requests[9]; and (5) order the Defendants to provide updated responses to Plaintiffs' interrogatories.[10]  Defendants generally oppose the motion in its entirety.  However, in addition to its substantive opposition, they also object that the motion is untimely and that the Plaintiffs have not complied with the Local Rules.

### a.    The Pre-Motion Requirements

The Court will first consider Defendants' objection that the motion is untimely, and that Plaintiffs have not satisfied their pre-motion obligations.  There are three requirements at issue: (1) the duty to confer between counsel; (2) the obligation to participate in a pre-motion conference with

---

[7]The discovery requests at issue are "Plaintiffs' Initial Requests for the Production of Documents to Defendants Lawrence Payne and Patricia Payne."  *See* Doc. 77-10 (Exhibit I).  The specific requests in dispute are numbered: 1, 2, 5, 7, 8, 9, 10, 11, 13, 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 29 (as amended), 31, and 32. The Court recognizes that request number 29 was amended and will thus consider the amended request when appropriate.

[8]Defendants objected to a number of discovery requests in Plaintiffs' initial request for production.  The objections in dispute are to discovery requests numbered: 3, 4, 6, 12, 14, 18, 27 and 28.

[9]The discovery requests at issue are "Plaintiffs' Supplemental Requests for the Production of Documents to Defendants Lawrence Payne and Patricia Payne."  *See* Doc. 77-6 (Exhibit E).  The specific requests in dispute are numbered: 1, 2 and 3.

[10]The interrogatories in dispute are: "Plaintiffs' First Interrogatories to Defendant Lawrence Payne" and "Plaintiffs' First Interrogatories to Defendant Patricia Payne."  *See* Doc. 77-3 (Exhibit B).  The interrogatories appear to be identical, and Plaintiffs' motion makes no distinction between the two.  As such, the Court will address both sets together.  The interrogatories in dispute are numbered: 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, 21, and 24.

the Court; and (3) the necessity to file a motion to compel within 30-days of an alleged default.  The Court will consider each issue in turn.

A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  The Local Rules further state that a court "will not entertain any motion to resolve a discovery dispute" unless a reasonable effort has been made to confer regarding the motion's underlying issue(s) prior to the filing of the motion. D. Kan. Rule 37.2.  The Local Rules also require the certification to describe with particularity the steps taken by all counsel to resolve the issue in dispute.  These requirements encourage parties to resolve discovery disputes "without judicial intervention."  *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999).  *See also VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, No. CIV. A. 98-2138-KHV, 1999 WL 386949, at *1 (D. Kan. June 8, 1999).  However, even if the Court determines that a party did not fulfill its duty to confer, the Court, in its discretion, may choose to determine a motion to compel on its merits even when the duty to confer has not been fulfilled under certain circumstances.  *Cf. White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, No. CIV.A. 07-2319-CM, 2009 WL 722056, at *2 (D. Kan. Mar. 18, 2009) (holding that a court can consider the underlying issues when "the interests of justice are best served by taking up the motion [to compel] on its merits.").

In addition to the duty to confer concerning discovery disputes, the parties are also required to engage the Court before a motion is filed.  D. Kan. Rule 37.1(a).  Local Rule 37.1(a) provides:

> **Pre-Motion Conference**. Before filing any disputed discovery-related motion, and after satisfying the duty to confer or to make a reasonable effort to confer in D. Kan. Rule 37.2, the party intending to file a discovery-related motion must contact the court to arrange a telephone conference with the judge and opposing counsel . . . **[u]nless otherwise requested by the court, no disputed discovery-related motion, material, or argument should be filed or submitted prior to this telephone conference**.

D. Kan. Rule. 37.1(a) (emphasis added). The Court, in its discretion, may deny a motion when the parties fail to comply with this requirement. The purpose of the rule is to help facilitate the resolution of discovery disputes without engaging in motions practice. Compliance with the rule is necessary to preserve the Court's resources as well as to help efficiently resolve discovery disputes without expending substantial time or money.

The District of Kansas also has local rules which address the timeliness of a motion to compel. Pursuant to D. Kan. Rule 37.1(c):

> **Time for Filing Discovery-Related Motions**. Any discovery-related motion must be filed within 30 days of the default or service of the response, objection, or disclosure that is the subject of the motion, or, for all other disputes, within 30 days after the movant knew or reasonably should have known of the potential dispute. The court may deny any motion filed after that 30-day period as untimely unless the movant demonstrates diligence in attempting to resolve the specific discovery dispute at issue.

The purpose of the rule "is to ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation." *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. CIV A 05-2001-DJW, 2008 WL 5046345, at *1 (D. Kan. Nov. 24, 2008) (citing *Cont'l Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *4 (D. Kan. Jan. 7, 2008)). The 30-day rule in D. Kan. 37.1(c) is also intended to promote the timely and efficient completion of discovery. *See* Fed. R. Civ. P. 1. Supplemental production may serve as a new "triggering event" for the running of the 30-day deadline to file a motion to compel. *Neonatal Prod. Grp., Inc., v. Shields*, No. 13-2601-DDC, 2015 WL 7078796, at *2-3 (D. Kan. Nov. 13, 2015). *See also No Spill, LLC v. Scepter Canada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021) (ruling that supplemental production served as a new triggering event).

When a discovery motion is filed after the time allowed by D. Kan. Rule 37.1(c), the Court may determine if there is "excusable neglect" for the untimely filing. *See, e.g.*, *No Spill*, 2021 WL 5906042, at *4-5 (finding excusable neglect present when party did not file its motion to compel within the time prescribed by Local Rule). To do so, the Court considers the following factors: "(1)

whether the movant acted in good faith; (2) reason for the delay, including whether it was within the reasonable control of the movant; (3) danger of prejudice to the nonmoving party; and (4) length of the delay and its potential impact on judicial proceedings." *Grider v. Shawnee Mission Med. Ctr., Inc.*, No. 16-2750-DDC-GLR, 2018 WL 2225011, at *2 (D. Kan. May 15, 2018) (internal citation omitted).

### i.   The Timeliness of Plaintiffs' Initial Requests for Production

Here, there are three sets of discovery requests at issue: (1) Plaintiffs' initial requests for production; (2) Plaintiffs' first interrogatories; and (3) Plaintiffs' supplemental requests for production.  The Court will first consider Plaintiffs' initial request for production which has a long history in this case.  The initial requests for production were first served on February 17, 2023, and Defendants responded on March 20, 2023.  *See* Docs. 77-2, 77-4.  The parties engaged the Court and requested a pre-motion conference to address alleged deficiencies in Defendants' responses.[11]  The pre-motion conference, which occurred on May 4, 2023, pertained to Defendants' responses and objections to Plaintiffs' first requests for document production.  After holding the pre-motion conference, the Plaintiffs agreed to serve amended discovery requests and Defendants agreed to respond to those requests within seven days.  Doc. 32.  Defendants responded to Plaintiffs' revised initial requests for production on May 12, 2023.  *See* Doc. 33, 77-11.

On June 6, 2023, defense counsel moved to withdraw from the case.  Doc. 39.  Magistrate Judge Gale held a bifurcated hearing.  He first held an *ex-parte* hearing with former defense counsel and their clients.  As a result of the hearing, he granted defense counsel's motion.  After that hearing, he immediately held a hearing with the Defendants *pro se* and with Plaintiffs.  He granted Defendants time to retain new counsel and suspended all deadlines.  Doc. 48.  The suspended

---

[11]There are numerous requests at issue, but for purposes of addressing the issue of timeliness, the Court need not address the individual requests at this juncture.

deadlines included the motion to compel deadline regarding Plaintiffs' revised initial request for production. The Court held a scheduling conference with new defense counsel on August 14, 2023. The Court encouraged the parties to discuss the on-going discovery disputes prior to that scheduling conference. Doc. 56. During that scheduling conference, Magistrate Judge Gale informed the parties that he considered the pre-motion conference requirement satisfied as it pertained to Plaintiffs' revised requests for production.[12] After that hearing, Plaintiffs apparently received significant document production on a rolling basis. Plaintiffs received responsive document production on August 9, August 25, and September 25. Plaintiff then filed their original motion to compel on October 25, 2023.

The Court is satisfied that the Plaintiffs' have satisfied the pre-motion requirements as it pertains to their revised initial requests for production. They have met and conferred regarding document production spanning back to March of 2023. Due to circumstances out of their control, the case was stayed, and former defense counsel withdrew from the case. Magistrate Judge Gale temporarily suspended that deadline, which was reset at the August 14, 2023 scheduling conference when the case stay was lifted. Since then, Defendants have made several document productions, with the latest occurring on September 25, 2023. This last document production served as the last triggering event for Plaintiffs' motion to compel deadline. *See No Spill*, 2021 WL 5906042, at *3. The District of Kansas has held that allowing new document production to serve as a new triggering event is to prevent thwarting parties from bringing motions to compel due to insufficient supplemental discovery responses. *Shields*, 2015 WL 7078796, at *3. Plaintiffs filed their motion to compel within 30-days of September 25, 2023. The Court does not view Magistrate Judge Gale's

---

[12]This is not the only time Judge Gale recognized that the pre-motion requirements have been satisfied as it relates to the initial requests for production. Judge Gale stated that he considered the requirements satisfied during both the May 4, 2023 pre-motion conference and July 24, 2023 status conference. He encouraged further discussion between counsel and suggested that an additional pre-motion conference may be beneficial; however, he declined to impose further conditions before a motion to compel is filed.

permission to file a motion to compel as narrow as Defendants.  Although many of the issues during

the May 4 pre-motion conference related to the Company financials, the conference was not limited

to just those issues.  Judge Gale did not grant permission to file a motion compel regarding only

some of the discovery requests within Plaintiffs' initial set.  The initial requests have been discussed

between the parties in detail and the Court has held a pre-motion conference regarding that set.  As

such, the Court finds the motion to compel as it relates to Plaintiffs' revised initial requests for

production of documents to be timely and will consider the responses on their merits.  However, the

Court has concerns regarding the timeliness of Plaintiffs' interrogatories and supplemental requests

for production.

### ii.    The Timeliness of Plaintiffs' Interrogatories and Supplemental Requests for Production

Plaintiffs' interrogatories and supplemental requests for production were served on March

28, 2023, and March 29, 2023, respectively.  Docs. 22, 23.  Defendants responded to both sets of

discovery on April 27, 2023.  Doc. 31.  Since Defendants' responses, there has been no engagement

with the Court regarding these sets of discovery requests or responses thereto.  When the Plaintiffs

arranged the May 4, 2023 pre-motion conference, they sent an email to the Court which contained a

joint position statement and the issues they intended to raise.  The email also contained an

attachment which included Plaintiffs' initial requests for production and Defendants' discovery

responses.  No other sets of discovery were included or addressed during the conference.  The

Court has not addressed the substance of the supplemental requests for production or the

interrogatories until the present motion.[13]  Magistrate Judge Gale did not grant permission to file a

motion to compel for any dispute that had occurred arising out of these discovery requests.  He

---

[13]The Court recognizes that there are similarities between the sets of discovery; however, they are nonetheless
distinct sets of discovery with their own unique discovery requests.

granted permission to file a motion to compel regarding Plaintiffs' initial requests for production.  A

pre-motion conference was held regarding that set of discovery and that is what Judge Gale

referenced when he gave leave to file a motion to compel.  Plaintiffs may not use Judge Gale's grant

of leave to file a motion to compel regarding the initial requests for production to shoehorn in a

motion to compel regarding *all discovery-disputes* that occurred in the case.  A pre-motion conference

was never held as to the interrogatories or the supplemental requests for production, and the time to

do so has passed.[14]  Nor do Plaintiffs argue that excusable neglect is present, and the Court does not

find that it is present.  Accordingly, the Court finds that the time to file a motion to compel,

regarding Plaintiffs' Supplemental Requests for the Production of Documents and Plaintiffs' First

Interrogatories to Defendants, has passed.  The Court **DENIES** the motion as to these sets of

discovery requests.

### b.  Plaintiffs' Initial Requests for the Production of Documents

The Court next considers the merits of Plaintiffs' initial requests for production.  Plaintiffs

request the Court to order Defendants to organize their production pursuant to Fed. R. Civ. P.

34(b), compel Defendants to provide all responsive documents in their possession, custody, or

control in response to their revised discovery requests, and overrule any objections to document

production.

### i.   Document Production Obligations pursuant to Federal Rule of Civil Procedure 34

First, Plaintiffs argue that Defendants should organize their document production pursuant

to Fed. R. Civ. P. 34(b).  Specifically, they argue that Defendants' document production to date is a

---

[14]The Court is also skeptical that the meet and confer obligation pursuant to D. Kan. Rule 37.2 has been met.
The parties have substantially different views regarding whether the obligation has been met as well as
different views concerning the scope and subject-matter of prior discussions.  However, since the Court finds
that the pre-motion conference has not been met and the 30-day deadline to file a motion to compel has
passed, it need not make a finding as to the meet and confer requirement.

"document dump" and they did not specify which documents correlate to which discovery request. Defendants contend that they have produced the documents as they were maintained in the usual course of business which satisfies the Federal Rules.

Fed. R. Civ. P. 34 governs the production of documents and electronically stored information ("ESI") during discovery.  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i).  The purpose of the Rule is to prevent parties from deliberately mixing critical documents with others in the hope of obscuring significance.  Fed. R. Civ. P. 34 advisory committee's note to 1980 amendment (quoting Report of the Special Committee for the Study of Discovery Abuse, Section of Litigation of the American Bar Association (1977)). The Rule allows the producing party two methods for producing documents: either (1) producing documents in the usual course of business or (2) correlating documents with specific discovery requests.  *Id.*  The Rule is disjunctive and there is no obligation to correlate documents to discovery requests if the producing party produced documents as they are kept in the usual course of business. *MGP Ingredients, Inc. v. Mars, Inc.*, No. CIV.A.06-2318JWL-DJW, 2007 WL 3010343, at *3 (D. Kan. Oct. 15, 2007).

The Federal Rules do not define what it means to produce documents as they are kept in the usual course of business.  *Bergersen v. Shelter Mut. Ins. Co.*, No. 05-1044-JTM-DWB, 2006 WL 334675, at *2 (D. Kan. Feb. 14, 2006).  However, this District has addressed the issue and has held that the party who elects to produce documents as they are kept in the usual course of business bears the burden of showing that the documents were actually produced in that manner.  *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006).  *See also Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005).  A mere assertion that they were produced in that manner is not sufficient to carry that burden.  *Id.* at 540-41 (citing *Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 618 (D.

Kan. 2005)). The Court must review the information provided by the parties and then determine whether the documents were actually produced as they were kept in the usual course of business. *Id.*

In this case, Defendants allege that all documents were produced as they were maintained in the usual course of business. They further assert that the "[w]e did not in any way 'mix' documents. Instead, documents were gathered from various sources, reviewed, and responsive documents were produced from those sources." Doc. 80, at 5. The Court has struggled with understanding the details of Defendants' production. The pleadings and exhibits lack detail and particulars regarding how the documents were kept in the usual course of business and in what way they were produced to the Plaintiffs. Defendants provide the example that they "agreed to produce what had been provided to Goldberg and we produced such documents in the manner that they had been maintained in being provided to him." Doc. 80 at 5. Their brief does not elaborate on who "Goldberg" is, but a review of the record and the interrogatory responses reveal that the person is an accountant who the Company previously engaged. This individual appears to be the accountant who conducted the "audit" for the Company.

As discussed earlier, the details of this "audit" are unclear and the parties disagree regarding the sufficiency of the resulting report as well as the way it was conducted. The accountant produced a report after reviewing the documents that the Defendants provided to him. There is no information pertaining to how the documents were maintained prior to when the accountant began his work or any details regarding how Mr. Goldberg handled the documents while they were in his possession. The Court does not have enough evidence to find that the Defendants met their burden to show that the documents were produced in the usual course of business, but rather, the Court finds that the Defendants relied on "mere assertion[s]." *See Johnson*, 236 F.R.D. 535 at 540-41. Accordingly, Defendants are ordered to organize and label their document production to correspond to the categories in the discovery requests. Defendants may also choose to identify by

bates stamp number which documents produced are responsive to which requests.

> **ii.    Requests for Production relating to Prior Agreements between Counsel**

Plaintiffs state that there purportedly was an agreement whereby Defendants would produce documents responsive to requests for production numbered: 1, 2, 5, 7, 8, 9, 10, 11, 13, 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 29 (as amended), 31, and 32.  Doc. 77 at 7.  Defendants appear to be in at least partial agreement that there would be some production.  *See* Doc. 80 at 6.  The Court declines to decipher the existence of prior agreements and interpret what the parties previously intended. Instead, the Court has independently reviewed every request and response that was alleged to have been part of those prior agreements.[15]

In the responses to requests for production numbered 2, 7, 8, 10, 11, 16, 17, 23, 25, 31, and 32, Defendants stated that they will produce responsive documents or attempt to locate responsive documents that will later be produced.  Defendants are ordered to produce all responsive documents and provide Plaintiffs with a certification that they have produced all responsive documents to these requests that are in their possession, custody, or control.

This leaves 1, 5, 9, 13, 15, 19, 21, 22, 24, 26 and 29.  In request number 5, Defendants indicated that they have produced or will produce all responsive documents to subparts i-viii. However, they objected to subsection ix which requested documents pertaining to "[a]ny other Company matter which would normally be reflected in the minute book."  Doc. 77-11 at 4-5. Defendants objected on the basis that the subsection was a "catch-all" category which was overbroad and vague.  The Court agrees.  That particular subsection is not narrowly tailored, and it is not clear what documents may fall under that category.  The objection is sustained as to subsection ix.  However, Defendants agreed to produce responsive documents to the remaining

---

[15]This applies to requests for production numbered: 1, 2, 5, 7, 8, 9, 10, 11, 13, 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 29 (as amended), 31, and 32.

subsections.  Defendants are ordered to similarly certify that they have produced all responsive documents to request number 5 (with the exception of subsection ix) that are in their possession, custody, or control.

In the responses to requests for production numbered 1, 9, 13, 15, 19, 22, 24, 26, and 29, the Defendants agreed to produce responsive documents, but provided a qualification that they may withhold documents they believe to be subject to an applicable privilege.  Absent an agreement between the parties or an order from the Court, a party may not withhold documents subject to privilege without providing the opposing party with a privilege log or some other equivalent.  The Federal Rules provide that:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  In this District, compliance with this Rule typically means producing a privilege log.  *See, e.g.*, *Phillips v. Boilermaker-Blacksmith Nat'l Pension Tr.*, No. 19-CV-02402-TC-KGG, 2021 WL 4453574, at *3 (D. Kan. Sept. 29, 2021).  *See also, e.g.*, *Harrington v. Kansas*, No. 5:20-CV-4081-HLT-KGG, 2021 WL 5505452, at *5-6 (D. Kan. Nov. 24, 2021) (recognizing the producing party must provide a privilege log).

The party withholding documents subject to privilege must submit a privilege log, which is required to include:

> (1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; (2) The date upon which the document was prepared; (3) The date of the document (if different from # 2); (4) The identity of the person(s) who prepared the document; (5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney; (6) The purpose of preparing the document, including

an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;' (7) The number of pages of the document; (8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and (9) Any other pertinent information necessary to establish the elements of each asserted privilege.

*Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citing *BridgeBuilder Tax + Legal Servs., P.A. v. Torus Specialty Ins. Co.*, No. 16-2236-JWL-GEB, 2017 WL 914809, at *4 (D. Kan. Mar. 8, 2017) (citations omitted)).  "The objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability."  *Leftwich*, 2017 WL 1338838, at *2.  If a party fails to produce a privilege log or provides an inadequate one, the privilege may be deemed waived.  *Sprint Comm'ns Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046-JWL, 2009 WL 2878446, at *1 (D. Kan. Sept. 2, 2009).  However, "courts often reserve such a penalty for those cases where the offending party unjustifiably delayed in responding to the discovery requests or acted in bad faith."  *Id.*

Here, the Defendants have not provided a privilege log.  However, Plaintiffs now request the Defendants to identify what, if any, documents have been withheld pursuant to privilege.  As discussed earlier, it is common for parties to agree that a privilege log does not need to be provided for certain categories of documents or for certain discovery requests.  This practice can help streamline discovery and make discovery more efficient.  However, absent such an agreement, parties are required to maintain a privilege log.  Although in some extreme cases, the privilege may be deemed waive for failing to produce a log, the Court declines to do so here.  Instead, the Court orders Defendants to provide Plaintiffs with an adequate privilege log consistent with the case law in this district.  Additionally, Defendants are also ordered to produce, or certify that they have

produced, all non-privileged and responsive documents to discovery requests numbered: 1, 9, 13, 15, 19, 22, 24, 26, and 29.  To the extent some documents are withheld pursuant to privilege, they must be accounted for in a privilege log.

Request for production number 21 seeks all company operating agreements, including the 2020 operating agreement, as well as all documents and communications relating to those agreements.[16]  Defendants object on the basis that the 2020 operating agreement was never executed and therefore object to any implication that there was a valid 2020 operating agreement between the parties.  They then go on to respond that they will produce all draft versions of the 2020 operating agreement as well as all other responsive documents.

It is not clear whether Defendants are withholding any documents based upon their objection.  Although Defendants are free to disagree with Plaintiffs' characterization, that does not relieve them of producing documents that are relevant and not privileged.  *See DIRECTV, Inc. v. Trinh*, No. CV 04-315 RB/RLP, 2004 WL 7337586, at *4 (D.N.M. Nov. 23, 2004).  The Court overrules the objection and orders that Defendants produce or certify that they have produced all responsive documents.  Defendants' response also contains a qualification that they will withhold any communications subject to the attorney-client privilege.  The Court orders that Defendants log any documents that are being withheld on the basis of privilege.  *See supra*.

### iii.    Discovery Requests objected to by Defendants

Plaintiffs move to compel responsive documents to requests for production 3, 4, 6, 12, 14, 18, 27, and 28, based upon improper objections.  Discovery requests numbers 3 and 4 seek monthly statements for any bank accounts or credit cards maintained by Defendants individually, or the

---

[16]In Plaintiffs' brief, they group this discovery request in with other discovery requests that Defendants have allegedly agreed to produce.  However, this request contains an objection.  The Court will not attempt to determine what agreements have taken place prior to the filing of the present motion.  As such, the Court will consider the discovery request and its objections on their merits.

Company.  Defendants similarly responded to both requests for production.  There is also a dispute regarding whether all the bank account statements have been produced.  Defendants' responses contain a partial objection in which they agree to produce all responsive documents pertinent to the Company, but object to producing responsive documents relating to the Defendants personally on the grounds of relevance.  However, Defendants agreed to produce some personal financial information such as: (i) financial documents being sought pursuant to Request No. 2[17] and on which Mr. Goldberg did his work; (ii) the "Nathan Barns Dropbox" documents being sought pursuant to Request No. 23[18]; and (iii) financial documents regarding NFT transactions which are the subject of Request No. 26.[19]  They further respond that they would be amenable to producing personal financial information with redactions to portions that are unrelated to the Company or transactions with the Company.

The disputed issue concerns whether Defendants' personal banking information and credit card statements are relevant and proportional to the needs of the case.  In this case, the Court finds the requests are relevant and overrules Defendants' objections, but will impose some limitations.  Plaintiffs' complaint alleges that Defendants unilaterally distributed more than $500,000 to themselves in 2019 and at least $1.5 million in 2020.  Doc. 1, at 7.  They further allege that Plaintiffs purchased numerous luxury vehicles, jewelry, and numerous NFTs in part or entirely through the

---

[17]Request No. 2 seeks "[c]opies of the Company's general ledger, profit and loss statements, audited and/or unaudited financial statements, including but not limited to all monthly and quarterly statements, and all K-1s issued to current and former members in the Company."  Doc. 77-10, at 9.

[18]Request No. 23 seeks "[a]ny and all documents uploaded, saved to or stored in the Company's Dropbox account, which Defendants admit existed. (See Answer ¶38)."  Doc. 77-10, at 12.

[19]Request No. 26 seeks "[a]ny and all documents and communications relating to Defendant Lawrence Payne's purchases of Non-Fungible Tokens ("NFT's"), including but not limited to a Bored Ape Yacht Club NFT purchased on December 19, 2021 for approximately $192,500; approximately 25 Mutant Ape Yacht Club NFTs each valued at approximately $121,000; approximately 30 Clone X -X Takashi Murakami NFTs each valued at approximately $53,000; and Defendants' assertion that "one of Mr. Payne's businesses (not Hardbody Supplements, LLC) purchased these NFTs." (See Complaint ¶81; Answer ¶80)."  Doc. 77-10, at 13.

misappropriation of Company assets.  Doc. 1 at 14-15.  The Defendants are alleged to have taken large distributions from the Company, misappropriated Company funds and used the funds to make lavish purchases, some of which were depicted on their Instagram accounts.  *Id.*

Plaintiffs bring claims for conversion, breach of fiduciary duty, breach of contract, and fraudulent inducement.  Defendants' control over the Company, the evidence suggesting Company funds may have been used for personal expenses, along with the allegations of self-dealing, render the Defendants' personal financial information relevant and proportional to the needs of the case. *See Les Indus. Wipeco, Inc. v. Bluestem Mgmt. Advisors, LLC*, No. 21-2289-JAR-ADM, 2023 WL 3119564, at *3 (D. Kan. Apr. 27, 2023) (granting access to personal bank-account statements).

Moreover, Defendants have not demonstrated an undue burden, oppression, embarrassment, or annoyance resulting from their production, but instead express generalized privacy concerns.  The protective order entered in this case should help alleviate these privacy concerns.  *See* Doc. 17.  The Court will, however, place some limits on Plaintiffs' requests.  All the financial information pertaining to the Company is relevant and must be produced.  To the extent that there are any transactions between the Company and the Defendants individually, those must also be produced.  As it pertains to the monthly statements for any bank accounts or credit cards maintained by Defendants individually, the Court will limit the temporal scope from 2019 to present.  Further, only transactions amounting to $10,000 or more are required to be produced. Redactions of transactions less than $10,000 are intended to serve the purpose of protecting irrelevant personal financial transactions., but also allow discovery into potentially relevant transactions such as large luxury purchases that were made or paid for with Company funds.

Discovery requests numbers 6, 12, 18, and 27 broadly seek information concerning the Company's contracts, assets, products, and expenses.  Specifically, the requests seek all documents and communications relating to the subject matter of the requests.  The Defendants agreed to

produce documents responsive to the requests, but object that the "communications" portion of the requests are vague and ambiguous.  Additionally, they object that discovery requests 12, 18, and 27 are overly broad.  The initial requests for production defined the term "communication" as follows:

> any disclosure, transfer, or exchange of information, whether orally or in writing, and whether in person, by telephone, by email, electronically or otherwise, including but not limited to, e-mails, text messages, discussions, statements, negotiations, inquiries, requests, notices, responses, reports, analyses, logs, journals, diaries, letters, demands and complaints.

Doc. 77-2, at 1.  Plaintiff further provided that "[t]he term 'communications' shall refer to internal communications and communications with any third party."  Doc. 77-2, at 2.  The Court finds that these definitions are reasonable and provide clarity on which communications are being sought.  Moreover, "[a] party responding to a discovery request should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests."  *Tank Connection, LLC v. Haight*, No. 13-CV-1392-JTM-TJJ, 2015 WL 3571424, at *3 (D. Kan. June 5, 2015).  The Court is confident that Defendants can reasonably respond to the discovery requests.  Their objections to discovery requests 6, 12, 18, and 27 are overruled.  Defendants are ordered to produce responsive documents to these requests.

Request for production number 28 (as amended) generally seeks documents relating to other entities in which Defendants have an ownership interest.  Specifically, the discovery request provides:

> Any and all documents relating to any corporations, partnerships (whether limited or general), limited liability companies, or other business ventures in which Defendants have had an ownership interest, other than the Company, in the following categories:
> i.    transactions or a relationship of any kind between the entity and the Company;
> ii.   organizing documents;
> iii.  operating agreements;
> iv.   documents sufficient show assets and liabilities;
> v.    bank account statements;
> vi.   any and all communications with or relating to the Company, Andrew Solomon, FC Fulfillment Services LLC, and Phoenix Forex Trading

22

Doc. 77-11, at 14.  Defendants object to subsections iv-vi.  In subsections iv and v, they object to "producing financial statements or banking records of other entities as being improper asset discovery of unrelated entities, unnecessary or additive given the productions that are being made on the other RFPs."  Doc. 77-11, at 15.  They also object that the discovery is not proportionate to the needs of the case.

The Court has reviewed the other requests for production that Defendants claim are duplicative and concludes that there may be documents responsive to this specific request but not the other discovery requests which are alleged to be duplicative.  Moreover, the documents appear to be relevant given that the Defendants identified other business entities as purchasing some of the NFTs in controversy and that some of these entities may be creditors of the Company.  However, the Court is not inclined to allow full discovery into the books of other entities.  The Court sustains Defendants' objection as to subsection iv.  The assets and liabilities of other Companies are not facially relevant to Plaintiffs' claims.  However, the Court will allow limited discovery into other entities' bank statements in which Defendants have an ownership interest.  Defendants are ordered to produce responsive documents to subsection v, but only as to direct transactions with the Company.

Defendants also object to subsection vi.  They object that the request is vague and ambiguous.  They also incorporate their objections to supplemental requests for production numbers 1 and 3 which generally object on the grounds of being overbroad and having no temporal limitation.  The Court has already ruled that the term "communication" is not vague or ambiguous and thus overrules those objections.  However, the Court will add a temporal limitation of 2019 to present.  All other objections are overruled.  Defendants are ordered to produce responsive documents to subsection vi from 2019 to present.

Lastly, Plaintiffs identified request for production number 14 as being improperly objected

23

to or receiving inadequate document production.  Doc. 77, at 7.  However, after referencing that discovery request, they provide no further argument or support for the request.  Defendants similarly do not address the discovery request.  As such, the Court finds Plaintiffs have not met their burden and that Defendants have met their discovery obligations as to that discovery request.

Defendants request that the Court award attorney's fees incurred in opposing the motion pursuant to Fed. R. Civ. P. 37(a)(5)(B).  There are not circumstances present to justify awarding attorney's fees in this matter.  The motion was substantially justified and there were meritorious arguments from both sides of the litigation.  Accordingly, Defendants' request for attorney's fees is **DENIED**.

## IV.    Conclusion

To summarize, the Court found that Plaintiffs' First Interrogatories to Defendants Lawrence Payne and Patricia Payne, and Plaintiffs' Supplemental Requests for the Production of Documents are untimely and that the pre-motion obligations have not been met.  The motion is **DENIED** as to these discovery requests.  The Court did, however, consider the merits of Plaintiffs' initial requests for production.  The motion is **GRANTED in part and DENIED in part** as to these discovery requests.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to compel, Doc. 76, is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants organize and label their document production to correspond to the categories in the discovery requests.  Defendants may also choose to identify by bates stamp number which documents produced are responsive to which requests.

**IT IS FURTHER ORDERED** that Defendants produce responsive documents, and provide Plaintiffs with a certification that they have produced all responsive documents, to discovery requests numbered: 1, 2, 5 (except subsection ix), 7, 8, 9, 10, 11, 13, 15, 16, 17, 19, 21, 22, 23, 24, 25,

26, 29 (as amended), 31, and 32.

**IT IS FURTHER ORDERED** that Defendants provide Plaintiffs with an adequate privilege log consistent with the case law in this district.

**IT IS FURTHER ORDERED** that Defendants respond to discovery requests numbers 3, 4, 6, 12, 18, 27, and 28 (as amended), consistent with this order and provide a certification of the same.

**IT IS FURTHER ORDERED** that Defendants fully comply with the requirements of this order by **January 19, 2024**.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees is **DENIED.**

**IT IS SO ORDERED.**

Dated December 13, 2023, at Wichita, Kansas.

/s B<small>ROOKS</small> G. S<small>EVERSON</small>
Brooks G. Severson
United States Magistrate Judge